# CLEMONS *v.* MISSISSIPPI

No. 88–6873.   Argued November 28, 1989—Decided March 28, 1990

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed an opinion concurring in part and dissenting in part, *post*, p. 755. BLACKMUN, J., filed an opinion concurring in part and dissenting in part, in which BRENNAN, MARSHALL, and STEVENS, JJ., joined, *post*, p. 756.

*Kenneth S. Resnick* argued the cause and filed a brief for petitioner.

*Marvin L. White, Jr.*, Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief was *Mike Moore*, Attorney General.*

---

*\*Mark D. Schneider* filed a brief for the Mississippi Capital Defense Resource Center, Inc., as *amicus curiae* urging reversal.

A brief of *amici curiae* urging affirmance was filed for the State of California et al. by *John K. Van de Kamp*, Attorney General of California, *Richard B. Iglehart*, Chief Assistant Attorney General, *John H. Sugiyama*, Senior Assistant Attorney General, and *Ronald S. Matthias* and *Dane R. Gillette*, Deputy Attorneys General, *Don Siegelman*, Attorney General of Alabama, *Robert K. Corbin*, Attorney General of Arizona, *Duane Woodard*, Attorney General of Colorado, *John J. Kelly*, Chief State's Attorney of Connecticut, *Charles M. Oberly III*, Attorney General of Delaware,

JUSTICE WHITE delivered the opinion of the Court.

The Mississippi Supreme Court upheld the death sentence imposed on Chandler Clemons even though the jury instruction regarding one of the aggravating factors pressed by the State, that the murder was "especially heinous, atrocious, or cruel," was constitutionally invalid in light of our decision in *Maynard* v. *Cartwright*, 486 U. S. 356 (1988). Although we hold that the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review, we vacate the judgment below and remand, because it is unclear whether the Mississippi Supreme Court correctly employed either of these methods.

I

On the evening of April 17, 1987, petitioner Clemons complained to friends that he needed money and suggested a robbery of a pizza delivery man. Clemons used a pay telephone to order a pizza to be delivered to an apartment complex. He and two others, Calvin and Hay, went to the complex in a car and waited. When the pizza delivery vehicle arrived, Clemons and Hay got out of the car; Clemons carried a shotgun belonging to Hay. Clemons stopped and entered the

*James T. Jones,* Attorney General of Idaho, *Neil F. Hartigan,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *Frederic J. Cowan,* Attorney General of Kentucky, *William J. Guste, Jr.,* Attorney General of Louisiana, *William L. Webster,* Attorney General of Missouri, *Brian McKay,* Attorney General of Nevada, *Peter N. Perretti, Jr.,* Attorney General of New Jersey, *Hal Stratton,* Attorney General of New Mexico, *Lacy H. Thornburg,* Attorney General of North Carolina, *Anthony J. Celebrezze, Jr.,* Attorney General of Ohio, *T. Travis Medlock,* Attorney General of South Carolina, *Roger A. Tellinghuisen,* Attorney General of South Dakota, *Charles W. Burson,* Attorney General of Tennessee, *Mary Sue Terry,* Attorney General of Virginia, *R. Paul Van Dam,* Attorney General of Utah, and *Joseph B. Meyer,* Attorney General of Wyoming.

delivery vehicle and ordered the driver, Arthur Shorter, to get out of the car. Shorter was told to take any money he had out of his pockets, which he did. Clemons then told Shorter to lie down, took a bag of money and some pizza from the delivery vehicle, and was about to return to the car where Calvin was sitting when Hay asked if Shorter had seen Clemons' face. When Clemons answered in the affirmative, Hay told him he had to kill Shorter. Shorter begged for his life but Clemons shot him and got into the car with Hay and Calvin. As they drove away, Calvin looked back and saw Shorter raise his head once. Shorter died shortly thereafter.

The three men eventually went home. Clemons disposed of the shotgun in a hole in his backyard. Calvin, however, later that night related the robbery and shooting incident to his sister's friend, who happened to be a county jailer. The next day Clemons was arrested at his home and later made a videotaped statement in which he admitted being part of the group that robbed Shorter but denied foreknowledge of the robbery plan and denied that he had been the killer. Before trial Clemons also told the Sheriff where he had hidden the gun.

Clemons was indicted for capital murder and, after a change of venue, was tried before a jury. The principal witness against Clemons was Calvin, who had entered into a plea agreement with the State of Mississippi. Clemons was convicted of capital murder and a sentencing hearing was held. At the sentencing hearing, the State presented evidence arguably establishing that two statutory aggravating factors were present in this case: (1) that the murder was committed during the course of a robbery for pecuniary gain and (2) that it was an "especially heinous, atrocious or cruel" killing. Clemons presented testimony from his mother and a psychologist regarding mitigating evidence. The State argued the "especially heinous" factor extensively and with regard to that factor the trial court instructed the jury in the

bare terms of the Mississippi statute.[1] The jury was further instructed several times that it need not sentence Clemons to death even if it found that no mitigating circumstances were present. The jury sentenced Clemons to death, finding that both aggravating factors argued by the State were present and that they outweighed any mitigating circumstances.

Clemons appealed his conviction and sentence to the Mississippi Supreme Court, and that court affirmed. 535 So. 2d 1354 (1988). After rejecting Clemons' arguments regarding guilt and several of his challenges to the sentencing proceeding, the court addressed the validity of the "especially heinous" aggravating factor even though Clemons had never raised the issue. The court began by noting that our decision in *Maynard* v. *Cartwright, supra,* had invalidated Oklahoma's identical "especially heinous, atrocious, or cruel" aggravating circumstance because it was unconstitutionally vague and did not provide sufficient guidance to the jury in deciding whether to impose the death penalty. The court also recognized that we had refused to sustain the death penalty in *Maynard,* even though valid aggravating circumstances remained, because Oklahoma had no procedure for salvaging death sentences under such circumstances and that we had left the question of the effect of possible constitutional limiting constructions of the "especially heinous" factor to the Oklahoma courts in the first instance.

The Mississippi Supreme Court distinguished this case from *Maynard* and sustained Clemons' death sentence on the following grounds: (1) in Mississippi there is an established procedure that "when one aggravating circumstance is found

---

[1] The court instructed the jury as follows: "Consider only the following elements, if any, of aggravation in determining whether the death penalty should be imposed: . . . (2) The Capital offense was especially heinous, atrocious, or cruel." App. 25. This language is identical to that in Miss. Code Ann. § 99–19–101(5)(h) (Supp. 1989), which provides that "[a]ggravating circumstances shall be limited to the following: . . . (h) The capital offense was especially heinous, atrocious or cruel."

to be invalid or unsupported by the evidence, a remaining valid aggravating circumstance will nonetheless support the death penalty verdict," 535 So. 2d, at 1362 (citing cases); (2) the Mississippi Supreme Court has previously given the "especially heinous" factor a constitutional limiting construction, narrowing that category to murders that are conscienceless or pitiless and unnecessarily torturous to the victim, *id.*, at 1363 (citing *Coleman* v. *State*, 378 So. 2d 640, 648 (1979)); and (3) the trial court gave the jury no less than seven instructions that "singly and collectively told the jury that regardless of aggravating circumstances, they were not required to impose the death penalty," even "if . . . there were no mitigating circumstances." 535 So. 2d, at 1364 (citing instructions).

The court then stated that given all of these considerations plus "the brutal and torturous facts surrounding the murder of Arthur Shorter . . . it is inescapable that *Maynard* v. *Cartwright* does not dictate the outcome of the case sub judice." *Ibid.* The court added that "[w]e likewise are of the opinion beyond a reasonable doubt that the jury's verdict would have been the same with or without the 'especially heinous, atrocious or cruel' aggravating circumstance." *Ibid.* Finally, the court conducted its proportionality review. The court noted that it had reviewed the record and stated that "[i]n our opinion . . . the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other . . . ." *Id.*, at 1365. Three justices dissented, arguing that the sentence should be vacated and the case remanded to a jury for resentencing with properly defined aggravating factors. We granted certiorari, 491 U. S. 904 (1989).

## II

We deal first with petitioner's submission that it is constitutionally impermissible for an appellate court to uphold a death sentence imposed by a jury that has relied in part on an invalid aggravating circumstance. In *Zant* v. *Stephens*, 462 U. S. 862 (1983), we determined that in a State like Georgia,

where aggravating circumstances serve only to make a defendant eligible for the death penalty and not to determine the punishment, the invalidation of one aggravating circumstance does not necessarily require an appellate court to vacate a death sentence and remand to a jury. We withheld opinion, however, "concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty." *Id.*, at 890. In Mississippi, unlike the Georgia scheme considered in *Zant*, the finding of aggravating factors is part of the jury's sentencing determination, and the jury is required to weigh any mitigating factors against the aggravating circumstances.[2] Although these differences complicate the questions raised, we do not believe that they dictate reversal in this case.

A

Nothing in the Sixth Amendment as construed by our prior decisions indicates that a defendant's right to a jury trial would be infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence. Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court. *Cabana* v. *Bullock*, 474 U. S. 376 (1986), held that an appellate court can make the findings required by *Enmund* v. *Florida*, 458 U. S. 782 (1982), in the first instance and stated that "[t]he decision whether a particular punishment—even the

---

[2] Mississippi Code Ann. § 99–19–101(3)(c) (Supp. 1989) provides that "[f]or the jury to impose a sentence of death, it must unanimously find . . . (c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances."

death penalty—is appropriate in any given case is not one that we have ever required to be made by a jury." 474 U. S., at 385. *Spaziano* v. *Florida,* 468 U. S. 447 (1984), ruled that neither the Sixth Amendment, nor the Eighth Amendment, nor any other constitutional provision provides a defendant with the right to have a jury determine the appropriateness of a capital sentence; neither is there a double jeopardy prohibition on a judge's override of a jury's recommended sentence. Likewise, the Sixth Amendment does not require that a jury specify the aggravating factors that permit the imposition of capital punishment, *Hildwin* v. *Florida,* 490 U. S. 638 (1989), nor does it require jury sentencing, even where the sentence turns on specific findings of fact. *McMillan* v. *Pennsylvania,* 477 U. S. 79, 93 (1986).

## B

To avoid the import of these cases, Clemons argues that under Mississippi law only a jury has the authority to impose a death sentence, see Miss. Code Ann. § 99–19–101 (Supp. 1989), and that he therefore has a liberty interest under the Due Process Clause of the Fourteenth Amendment in having a jury make all determinations relevant to his sentence. He therefore argues that an appellate court cannot reweigh the balance of factors when the jury has found and relied on an invalid aggravating circumstance. Capital sentencing proceedings must of course satisfy the dictates of the Due Process Clause, *Gardner* v. *Florida,* 430 U. S. 349, 358 (1977) (plurality opinion), and we have recognized that when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes. *Hicks* v. *Oklahoma,* 447 U. S. 343 (1980). However, these two general propositions do not lead to the result Clemons seeks.

In *Hicks* v. *Oklahoma,* sentence had been imposed under an invalid recidivist statute that provided for a mandatory 40-year sentence. The Oklahoma Court of Criminal Appeals

affirmed the sentence because it was within the range of possible sentences the jury validly could have imposed. Hicks claimed, and the State conceded, that in Oklahoma only the jury could impose sentence. We held that under state law Hicks had a liberty interest in having the jury impose punishment, an interest that could not be overcome by the "frail conjecture" that the jury "might" have imposed the same sentence in the absence of the recidivist statute. *Id.*, at 346. We specifically pointed out, however, that the Oklahoma Court of Criminal Appeals did not "purport to cure the deprivation by itself reconsidering the appropriateness" of the 40-year sentence, *id.*, at 347 (footnote omitted), thus suggesting that appellate sentencing, if properly conducted, would not violate due process of law.

Contrary to the situation in *Hicks*, the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been, or was improperly, presented to the jury. The court did not consider itself bound in such circumstances to vacate the death sentence and to remand for a new sentencing proceeding before a jury. We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error, and which plainly means that we must reject Clemons' assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed. In this respect, the case is analogous to *Cabana* v. *Bullock, supra,* where we specifically rejected a due process challenge based on *Hicks* because state law created no entitlement to have a jury make findings that an appellate court also could make.[3] 474 U. S., at 387, and n. 4.

---

[3] We note also that although *Hicks* and a due process rationale were argued by the respondent in *Zant* v. *Stephens,* 462 U. S. 862 (1983), see Brief

## C

Clemons also submits that appellate courts are unable to fully consider and give effect to the mitigating evidence presented by defendants at the sentencing phase in a capital case and that it therefore violates the Eighth Amendment for an appellate court to undertake to reweigh aggravating and mitigating circumstances in an attempt to salvage the death sentence imposed by a jury. He insists, therefore, that he is entitled to a new sentencing hearing before a jury and that the decision below must be reversed. We are unpersuaded, however, that our cases require this result. Indeed, they point in the opposite direction.

The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime. See, *e. g., Spaziano* v. *Florida, supra,* at 460; *Zant* v. *Stephens,* 462 U. S., at 879; *Eddings* v. *Oklahoma,* 455 U. S. 104, 110–112 (1982); *Lockett* v. *Ohio,* 438 U. S. 586, 601–605 (1978) (plurality opinion); *Gregg* v. *Georgia,* 428 U. S. 153, 197 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.). In scrutinizing death penalty procedures under the Eighth Amendment, the Court has emphasized the "twin objectives" of "measured consistent application and fairness to the accused." *Eddings, supra,* at 110–111. See also *Lockett, supra,* at 604 (emphasizing the importance of reliability). Nothing inherent in the process of appellate reweighing is inconsistent with the pursuit of the foregoing objectives.

We see no reason to believe that careful appellate weighing of aggravating against mitigating circumstances in cases such as this would not produce "measured consistent application" of the death penalty or in any way be unfair to the defendant. It is a routine task of appellate courts to decide whether the

---

for Respondent, O. T. 1982, No. 81–89, pp. 37–38, and by the dissenters in *Barclay* v. *Florida,* 463 U. S. 939, 985–986 (1983), the Court implicitly rejected those arguments in both cases by refusing to address them.

evidence supports a jury verdict and in capital cases in "weighing" States, to consider whether the evidence is such that the sentencer could have arrived at the death sentence that was imposed. And, as the opinion below indicates, a similar process of weighing aggravating and mitigating evidence is involved in an appellate court's proportionality review. Furthermore, this Court has repeatedly emphasized that meaningful appellate review of death sentences promotes reliability and consistency. See, *e. g., Gregg* v. *Georgia, supra,* at 204–206 (joint opinion of Stewart, Powell, and STEVENS, JJ.); *Proffitt* v. *Florida,* 428 U. S. 242, 253 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); *Dobbert* v. *Florida,* 432 U. S. 282, 295–296 (1977); *Jurek* v. *Texas,* 428 U. S. 262, 276 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.). It is also important to note that state supreme courts in States authorizing the death penalty may well review many death sentences and that typical jurors, in contrast, will serve on only one such case during their lifetimes. See *Proffitt, supra,* at 252–253. Therefore, we conclude that state appellate courts can and do give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime.

This is surely the import of *Cabana* v. *Bullock,* 474 U. S. 376 (1986), which held that a state appellate court could make the finding that *Enmund* v. *Florida,* 458 U. S. 782 (1982), required for the imposition of the death penalty, *i. e.* whether the defendant had killed, attempted to kill, or intended to kill. *Wainwright* v. *Goode,* 464 U. S. 78 (1983) *(per curiam),* is likewise instructive. There, a Florida trial judge relied on an allegedly impermissible aggravating circumstance ("future dangerousness") in imposing a death sentence on Goode. The Florida Supreme Court conducted an independent review of the record, reweighed the mitigating and aggravating factors, and concluded that the death penalty was warranted. In a federal habeas proceeding, Goode then successfully chal-

lenged the trial court's reliance on the allegedly impermissible factor. We reversed the grant of the writ and concluded that even if the trial judge relied on a factor not available for his consideration under Florida law, the sentence could stand. "Whatever may have been true of the sentencing judge, there is no claim that in conducting its independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered Goode's future dangerousness. Consequently there is no sound basis for concluding that the procedures followed by the State produced an arbitrary or freakish sentence forbidden by the Eighth Amendment." *Id.*, at 86–87.[4]

We accordingly see nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence. Nor are we impressed with the claim that without written jury findings concerning mitigating circumstances, appellate courts cannot perform their proper role. In *Spaziano* and *Proffitt*, we upheld the Florida death penalty scheme permitting a trial judge to override a jury's recommendation of life even though there were no written jury findings. An appellate court also is able adequately to evaluate any evidence relating to mitigating factors without the assistance of written jury findings.

III

Clemons argues that even if appellate reweighing is permissible, the Mississippi Supreme Court did not actually reweigh the evidence in this case and instead simply held that

---

[4] Along similar lines, in *Solem* v. *Helm*, 463 U. S. 277 (1983), the Court concluded that appellate courts are capable of comparing the propriety of different criminal sentences and noted that "[t]he easiest comparison, of course, is between capital punishment and noncapital punishments, for the death penalty is different from other punishments in kind rather than degree." *Id.*, at 294 (footnote omitted).

when an aggravating circumstance relied on by the jury has been invalidated, the sentence may be affirmed as long as there remains at least one valid and undisturbed aggravating circumstance, an approach that requires no weighing whatsoever. The State on the other hand insists that a proper reweighing of aggravating circumstances was undertaken.

We find the opinion below unclear with respect to whether the Mississippi Supreme Court did perform a weighing function, either by disregarding entirely the "especially heinous" factor and weighing only the remaining aggravating circumstance against the mitigating evidence, or by including in the balance the "especially heinous" factor as narrowed by its prior decisions and embraced in this case. At one point the court recites the proper limiting construction of the "especially heinous" aggravating factor, 535 So. 2d, at 1363, and at times the court's opinion seems to indicate that the court was reweighing the mitigating circumstances and both aggravating factors by applying the proper definition to the "especially heinous" factor. For example, at one point the court refers to the "brutal and torturous facts" surrounding Shorter's murder and elsewhere states that "the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other." *Id.*, at 1364, 1365. At other times, however, the opinion indicates that the court may have been employing the other approach and disregarding the "especially heinous" factor entirely. "[T]his Court (Mississippi) has held and established unequivocally through the years that when one aggravating circumstance is found to be invalid or unsupported by the evidence, a remaining valid aggravating circumstance will nonetheless support the death penalty verdict." *Id.*, at 1362.

In addition, although the latter statement does not necessarily indicate that no reweighing was undertaken, the court's statement can be read as a rule authorizing or requiring affirmance of a death sentence so long as there remains at least one valid aggravating circumstance. If that is what the

Mississippi Supreme Court meant, then it was not conducting appellate reweighing as we understand the concept. An automatic rule of affirmance in a weighing State would be invalid under *Lockett* v. *Ohio,* 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982), for it would not give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances. Cf. *Barclay* v. *Florida,* 463 U. S. 939, 958 (1983) (plurality opinion). Additionally, because the Mississippi Supreme Court's opinion is virtually silent with respect to the particulars of the allegedly mitigating evidence presented by Clemons to the jury, we cannot be sure that the court fully heeded our cases emphasizing the importance of the sentencer's consideration of a defendant's mitigating evidence. We must, therefore, vacate the judgment below, and remand for further proceedings, insofar as the judgment purported to rely on the State Supreme Court's reweighing of aggravating and mitigating circumstances. Cf., *Cabana* v. *Bullock,* 474 U. S., at 390–392.

## IV

Even if under Mississippi law, the weighing of aggravating and mitigating circumstances were not an appellate, but a jury, function, it was open to the Mississippi Supreme Court to find that the error which occurred during the sentencing proceeding was harmless. See, *e. g., Satterwhite* v. *Texas,* 486 U. S. 249 (1988). As the plurality in *Barclay* v. *Florida, supra,* opined, the Florida Supreme Court could apply harmless-error analysis when reviewing a death sentence imposed by a trial judge who relied on an aggravating circumstance not available for his consideration under Florida law:

> "Cases such as [those cited by the petitioner] indicate that the Florida Supreme Court does not apply its harmless-error analysis in an automatic or mechanical fashion, but rather upholds death sentences on the basis of this analysis only when it actually finds that the error is

harmless. There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. . . . 'What is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.' *Zant*, [462 U. S.], at 879 (emphasis in original)." *Id.*, at 958.

Clemons argues, however, that the Mississippi Supreme Court incorrectly applied the harmless-error rule, that the court acted arbitrarily in applying it to his case when it refused to do so in a similar case, and that the State failed to prove beyond a reasonable doubt that any error was harmless.

With regard to harmless error, the Mississippi Supreme Court made only the following statement: "We likewise are of the opinion beyond a reasonable doubt that the jury's verdict would have been the same with or without the 'especially heinous, atrocious or cruel' aggravating circumstance." 535 So. 2d, at 1364. Although the court applied the proper "beyond a reasonable doubt" standard, see *Chapman* v. *California*, 386 U. S. 18, 24 (1967), its cryptic holding suggests that it was beyond reasonable doubt that the sentence would have been the same even if there had been no "especially heinous" instruction at all and only the aggravating circumstance that the murder was committed in the course of a robbery for pecuniary gain was to be balanced against the mitigating circumstances. We agree that it would be permissible to approach the harmless-error question in this fashion, but if this is the course the court took, its ultimate conclusion is very difficult to accept. As Clemons points out, the State repeatedly emphasized and argued the "especially heinous" factor during the sentencing hearing. The State placed little emphasis on the "robbery for pecuniary gain" factor. Under these circumstances, it would require a detailed explanation based on the record for us possibly to agree that the error

in giving the invalid "especially heinous" instruction was harmless.

It is perhaps possible, however, that the Mississippi Supreme Court intended to ask whether beyond reasonable doubt the result would have been the same had the especially heinous aggravating circumstance been properly defined in the jury instructions; and perhaps on this basis it could have determined that the failure to instruct properly was harmless error. Because we cannot be sure which course was followed in Clemons' case, however, we vacate the judgment insofar as it rested on harmless error and remand for further proceedings.

V

Nothing in this opinion is intended to convey the impression that state appellate courts are required to or necessarily should engage in reweighing or harmless-error analysis when errors have occurred in a capital sentencing proceeding. Our holding is only that such procedures are constitutionally permissible. In some situations, a state appellate court may conclude that peculiarities in a case make appellate reweighing or harmless-error analysis extremely speculative or impossible. We have previously noted that appellate courts may face certain difficulties in determining sentencing questions in the first instance. See *Caldwell* v. *Mississippi*, 472 U. S. 320, 330–331 (1985). Nevertheless, that decision is for state appellate courts, including the Mississippi Supreme Court in this case, to make.[5]

---

[5] We find unpersuasive Clemons' argument that the Mississippi Supreme Court's decision to remand to a sentencing jury in *Johnson* v. *State*, 511 So. 2d 1333 (1987), rev'd, 486 U. S. 578 (1988), on remand, 547 So. 2d 59 (1989), a case in which this Court reversed the death sentence because it depended in part on a jury finding that the "especially heinous" aggravating factor was present, indicates that the Mississippi Supreme Court acted arbitrarily in refusing to do the same in this case. *Johnson* is distinguishable because in that case the jury had found both that the defendant had been convicted of a prior violent felony and that the murder was especially heinous, atrocious, or cruel. In fact, the prior conviction the jury relied upon had been vacated and thus the jury was permitted to con-

## VI

For the foregoing reasons the judgment of the Mississippi Supreme Court is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE BRENNAN, concurring in part and dissenting in part.

I concur in the Court's holding that the judgment of the Mississippi Supreme Court must be vacated. I join JUSTICE BLACKMUN's separate opinion, however, rejecting the suggestion that a state court can save a death sentence by "reweighing" aggravating and mitigating circumstances. Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the

---

sider inadmissible evidence in determining the defendant's sentence. This Court noted in vacating the sentence that the Mississippi Supreme Court's refusal to rely on harmless-error analysis in upholding the sentence was "plainly justified" because the error "extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible" and in fact permitted the jury "to consider evidence that [was] revealed to be materially inaccurate." 486 U. S., at 590. The Court did not hold that the Mississippi Supreme Court could not have applied harmless-error analysis.

Given that two aggravating factors had been invalidated and inadmissible evidence had been presented to the jury, it was not unreasonable for the Mississippi Supreme Court to conclude that it could not conduct the harmless-error inquiry or adequately reweigh the mitigating factors and aggravating circumstances in *Johnson*. By contrast, in this case there is no serious suggestion that the State's reliance on the "especially heinous" factor led to the introduction of any evidence that was not otherwise admissible in either the guilt or sentencing phases of the proceeding. All of the circumstances surrounding the murder already had been aired during the guilt phase of the trial and a jury clearly is entitled to consider such evidence in imposing sentence. A state appellate court's decision to conduct harmless-error analysis or to reweigh aggravating and mitigating factors rather than remand to the sentencing jury violates the Constitution only if the decision is made arbitrarily. We cannot say that the Mississippi Supreme Court's refusal to remand in this case was rendered arbitrary by its decision to remand in *Johnson*.

Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would direct that the proceedings on remand be circumscribed so as to preclude the reimposition of the death sentence.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE STEVENS join, concurring in part and dissenting in part.

I agree that Mississippi's "especially heinous, atrocious or cruel" aggravating circumstance provided insufficient guidance to the sentencing jury,[1] and that the Supreme Court of Mississippi did not articulate a satisfactory basis for affirming the death sentence imposed upon Chandler Clemons. I therefore concur in the Court's holding that the judgment below must be vacated. I dissent, however, from the majority's strong and gratuitous suggestion that the Mississippi Supreme Court nevertheless may "salvage" Clemons' death sentence by performing its own weighing of aggravating and mitigating circumstances.

I

In *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), this Court considered Georgia's "outrageously or wantonly vile, horrible or inhuman" aggravating circumstance. The plurality stated: "There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" *Id.*, at 428–429. In *Maynard* v. *Cartwright*, 486 U. S. 356 (1988), we noted that "the language of the Oklahoma aggravating circumstance at issue—'especially heinous, atrocious, or

---

[1] Although the Court nowhere expressly states that the aggravating factor, as communicated to the jury, is unconstitutional, that assumption necessarily is implicit in the Court's opinion. If no trial-level error occurred, there would be no need for the Court to inquire whether the Mississippi Supreme Court had articulated a permissible basis for curing the error; nor would a remand be necessary.

cruel'—gave no more guidance than the 'outrageously or wantonly vile, horrible or inhuman' language that the jury returned in its verdict in *Godfrey*." *Id.*, at 363–364. The evil of a "catchall" aggravating circumstance such as this one is that it provides "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey* v. *Georgia*, 446 U. S., at 433 (plurality opinion). It therefore is apparent that Mississippi's "especially heinous, atrocious or cruel" aggravating circumstance is invalid unless the State has established some method by which its application can be limited meaningfully.

In the present case, the Mississippi Supreme Court sought to distinguish *Maynard* by pointing to a "limiting construction" adopted in *Coleman* v. *State*, 378 So. 2d 640 (Miss. 1979): "'"What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim."'" 535 So. 2d 1354, 1363 (1988) (quoting *Coleman*, 378 So. 2d, at 648, which in turn quoted *Spinkellink* v. *Wainwright*, 578 F. 2d 582, 611 (CA5 1978), cert. denied, 440 U. S. 976 (1979)). When one reads the *Coleman* opinion, however, it is apparent that it did not establish a "limiting construction" at all. The Mississippi court, at the page cited, further quoted:

> "'Again, we feel that the meaning of such terms is a matter of common knowledge, so that an ordinary man would not have to guess at what was intended.'" (Emphasis deleted.)

The *Coleman* court argued, in other words, that a sentencing jury could be expected to interpret the words "especially heinous, atrocious or cruel" as signifying "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Coleman* did not seek to clarify this aggravating circumstance. Rather, the court argued that no clarification

was necessary[2]—a proposition emphatically rejected in *Maynard*. The *Coleman* definition was never intended—and has proved to be utterly unable—to provide guidance to the sentencing jury.

In this case, as in the vast majority of Mississippi cases in which this aggravating circumstance has been submitted, the jury was given no guidance beyond the statutory language. The Mississippi Supreme Court frequently has held that the phrase "especially heinous, atrocious or cruel" is readily comprehensible to the average juror and that no further instruction is necessary.[3] On one occasion the court suggested that the better course is to give a clarifying instruction, but it shortly made it clear that a trial judge's failure to do so is not reversible error.[4] In another case the court went so far as

---

[2] The *Coleman* court also quoted its earlier statement in *Washington* v. *State*, 361 So. 2d 61, 65 (1978), cert. denied, 441 U. S. 916 (1979): " 'In our opinion the words "especially heinous, atrocious or cruel" are not confusing nor likely to be misunderstood by the average citizen. The average citizen has a reasonable knowledge of the generally accepted meaning of these words.' " 378 So. 2d, at 648.

[3] See, *e. g.*, *Jones* v. *State*, 517 So. 2d 1295, 1301 (1987) ("This Court has never found that such an instruction is constitutionally required, nor has any case appearing here been reversed for failure to grant the instruction defining 'heinous, atrocious and cruel.' We have held that the terms are not likely to be misunderstood and that they require no further definition"), vacated and remanded, 487 U. S. 1230 (1988); *Jordan* v. *State*, 464 So. 2d 475, 478 (1985), vacated and remanded, 476 U. S. 1101 (1986); *Booker* v. *State*, 449 So. 2d 209, 220–221 (1984), vacated and remanded, 472 U. S. 1023 (1985); *Irving* v. *State*, 441 So. 2d 846, 849 (1983), cert. denied, 470 U. S. 1059 (1985); *Edwards* v. *State*, 441 So. 2d 84, 90 (1983); *Tokman* v. *State*, 435 So. 2d 664, 669–670 (1983), cert. denied, 467 U. S. 1256 (1984).

[4] In *Mhoon* v. *State*, 464 So. 2d 77 (1985), the court vacated the defendant's sentence on other grounds but stated in dictum: "Absent a requirement that the jury be instructed as to the specific meaning of 'especially heinous, atrocious or cruel' the mandate of *Godfrey* is not met." *Id.*, at 85. The court indicated that on remand the trial judge should give a limiting instruction. *Ibid.* The suggestion that the Mississippi Supreme Court would require a clarifying instruction was short lived, however. In *Wiley*

to discourage the use of a clarifying instruction.[5]  The Mississippi Supreme Court even has upheld a trial judge's refusal to give an instruction, requested by the defense, that tracked the language of *Coleman*.[6]  In short, it is no accident and no anomaly that the jury in petitioner's case—like the Oklahoma jury in *Maynard*[7]—was left to its own devices in applying the "especially heinous, atrocious or cruel" aggravating circumstance.[8]

---

v. *State*, 484 So. 2d 339, 353–354, cert. denied, 479 U. S. 906 (1986), the court cited *Mhoon* but affirmed the jury's finding of the "especially heinous, atrocious or cruel" aggravating factor despite the fact that no limiting instruction was given.

[5] See *Jones* v. *State*, 517 So. 2d, at 1301 ("This Court has condemned the efforts of lower courts to define 'reasonable doubt' or 'malice.'  As stated, such terms should be left to the jury for its understanding and for applying its knowledge and experience.  We think the same reasoning and logic applies [to the phrase 'especially heinous, atrocious or cruel']").

[6] In *Evans* v. *State*, 422 So. 2d 737 (1982), cert. denied, 461 U. S. 939 (1983), the trial judge refused the following instruction requested by the defense: " 'The Court instructs the Jury that the terms heinous, atrocious, and cruel are deemed to include those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies in that it involved the conscienceless or pitiless crime which is unnecessarily torturous to the victim.  If you find from the evidence that the victim died a quick death without unnecessary pain and torture, then, though the crime is murder, it is not to be considered as especially heinous, atrocious or cruel.' "  422 So. 2d, at 745.  The Supreme Court of Mississippi held that "under the facts of the case sub judice and under the Mississippi statute, [this instruction] was too restrictive and its refusal does not constitute reversible error notwithstanding *Godfrey* v. *Georgia*."  *Ibid.*

[7] In fact, the jury in petitioner's case received even less guidance than did the Oklahoma jury in *Maynard*.  The Oklahoma jury was instructed that " 'the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.' "  See *Cartwright* v. *Maynard*, 822 F. 2d 1477, 1488 (CA10 1987).

[8] Since its decision in the present case, the Supreme Court of Mississippi now apparently recognizes that the "especially heinous, atrocious or cruel"

Nor has appellate review by the Mississippi Supreme Court served to limit the application of this aggravating circumstance to those murders that are "unnecessarily torturous to the victim." To begin with, the court has disavowed the *Coleman* definition in sustaining capital sentences. See *Irving* v. *State*, 441 So. 2d 846, 850 (1983) (aggravating circumstance held to be supported by the record even though victim died instantly: "While the great majority of death penalty cases affirmed by this Court involve some type of physical and/or mental torture to the victim, we have never specifically held that a finding of [this aggravating factor] must be supported by evidence of prolonged suffering"), cert. denied, 470 U. S. 1059 (1985).[9] In the vast majority of Mississippi cases in which a capital sentence has been imposed, the jury has concluded that the murder was "especially heinous, atrocious or cruel."[10] The Mississippi Supreme Court *never* has found that this aggravating circumstance was unsupported by the record. Often the aggravating circumstance

---

aggravating circumstance cannot constitutionally be submitted to the jury without a limiting instruction. See *Johnson* v. *State*, 547 So. 2d 59, 60 (1989); *Pinkney* v. *State*, 538 So. 2d 329, 355 (1988).

[9] See also *Booker* v. *State*, 449 So. 2d, at 209, 216 (photographs of gunshot victims were probative of "especially heinous, atrocious or cruel" aggravating circumstance; also probative was the fact that the defendant "could just have easily knocked Mr. Martin in the head and spared his life, but chose instead to kill him"). Cf. *Godfrey* v. *Georgia*, 446 U. S. 420, 433, n. 16 (1980) ("[I]t is constitutionally irrelevant that the petitioner used a shotgun instead of a rifle as the murder weapon, resulting in a gruesome spectacle in his mother-in-law's trailer. An interpretation of [the aggravating circumstance] so as to include all murders resulting in gruesome scenes would be totally irrational") (plurality opinion).

[10] See *Wiley* v. *State*, 484 So. 2d, at 359. ("The average citizens who have served on our capital sentencing juries demonstrably have misunderstood the statutory language in that, in the aggregate, they have ignored the law and acted upon the layman's intuitive notion that all murders are heinous, atrocious or cruel. There is no evidence that this aggravating circumstance has in any way served to narrow or guide rationally the jury's sentencing discretion") (Robertson, J., concurring).

has been upheld despite the fact that the victim died instantly or within a very brief period of time.[11]  In some of these cases, the Mississippi Supreme Court has stated only that the aggravating circumstance was supported by the record, or that the question was for the jury;[12] on other occasions the court has justified its decision by noting that the murder was as heinous, atrocious, or cruel as in previous cases where death was also instantaneous.[13]  In short, the "limiting construction" announced in *Coleman* has not prevented Mississippi juries from acting upon a belief that *every* murder is especially heinous, atrocious, or cruel.[14]  I therefore agree that petitioner Clemons' sentencing jury relied in part on an invalid aggravating factor, and I concur in the Court's decision to vacate the judgment of the Supreme Court of Mississippi.

---

[11] See, *e. g., Lockett* v. *State,* 517 So. 2d 1317 (1987), cert. denied, 487 U. S. 1210 (1988); *Jones* v. *State, supra; Wiley* v. *State, supra; Booker* v. *State, supra; Irving* v. *State,* 441 So. 2d 846 (1983); *Gilliard* v. *State,* 428 So. 2d 576, cert. denied, 464 U. S. 867 (1983); *Evans* v. *State, supra; Johnson* v. *State,* 416 So. 2d 383 (1982); *Edwards* v. *State,* 441 So. 2d 84 (1983); *Caldwell* v. *State,* 443 So. 2d 806 (1983), rev'd on other grounds, 472 U. S. 320 (1985).

[12] See, *e. g., Edwards* v. *State,* 441 So. 2d, at 92; *Caldwell* v. *State,* 443 So. 2d, at 814; *Evans* v. *State,* 422 So. 2d, at 743.

[13] See, *e. g., Lockett* v. *State,* 517 So. 2d, at 1337 ("These facts seem closely analogous to those which did not require reversal in *[Jones* and *Wiley]*"); *Wiley* v. *State,* 484 So. 2d, at 354 ("The facts of the present case are similar to the facts in *Edwards*"); *Irving* v. *State,* 441 So. 2d, at 850 ("[T]he present case depicts a killing no less heinous than those in *Edwards* and *Gilliard*").

[14] In *Johnson* v. *State,* 477 So. 2d 196 (1985), cert. denied, 476 U. S. 1109 (1986), the court stated: "The very word 'murder' embraces within its meaning cruelty, brutality and an evil intent carried to the ultimate in harm: death.  It is redundant to characterize a murder as cruel, brutal or malicious." 477 So. 2d, at 217.  Two pages later, *id.,* at 219, the court affirmed the jury's finding of the "especially heinous, atrocious or cruel" aggravating circumstance; the court offered no analysis, but simply cited its prior opinions in *Booker, Caldwell,* and *Irving.*

## II

As stated above, however, I dissent from the majority's gratuitous suggestion that on remand the Mississippi Supreme Court itself may reweigh aggravating and mitigating circumstances and thereby salvage petitioner's death sentence.  That portion of the Court's discussion is a pure and simple advisory opinion, something I thought this Court avoided and was disinclined to issue.  See *Michigan* v. *Long*, 463 U. S. 1032, 1040–1041 (1983); *Bayard* v. *Lombard*, 9 How. 530, 548–549 (1850).  The majority recognizes, as it must, that the Mississippi Supreme Court has given no clear indication that it intends to reweigh or that under state law it has the power to do so.  The Court's determination that reweighing is constitutional has no bearing upon our conclusion, which is to vacate the Mississippi judgment and remand the case for further proceedings in the state courts.  Rather than awaiting, and then reviewing, the decisions of other tribunals, the Court today assumes that its role is to offer helpful suggestions to state courts seeking to expedite the capital sentencing process.  Of course the Court's discussion of reweighing may have an effect on the form that the state proceedings will take.  But the impropriety of an advisory opinion is not eliminated by the possibility that the state court will act upon the advice.

In my view, the majority's discussion of the reweighing issue is sadly flawed.  If a jury's verdict rests in part upon a constitutionally impermissible aggravating factor, and the State's appellate court upholds the death sentence based upon its own reweighing of legitimate aggravating and mitigating circumstances, the appellate court, in any real sense, has not approved or affirmed the verdict of the jury. Rather, the reviewing court in that situation has assumed for itself the role of sentencer.  The logical implication of the majority's approach is that no trial-level sentencing procedure need be conducted at all.  Instead, the record of a capital trial (including a sentencing hearing conducted before a

court reporter) might as well be shipped to the appellate court, which then would determine the appropriate sentence in the first instance.

The Court's approval of appellate sentencing finds little basis in our precedents. The majority relies principally on three of this Court's capital sentencing decisions. Two of these cases seem to me to be inapposite; the third, while lending frail support to the majority's conclusion, is distinguishable in its really crucial aspects.

*Cabana* v. *Bullock*, 474 U. S. 376 (1986), is the only case that possibly provides theoretical support for the majority's position. In the end, however, I believe that the Court's opinion today goes significantly beyond the result reached in *Bullock*. In that case a bare majority of the Court held that the finding required by *Enmund* v. *Florida*, 458 U. S. 782 (1982)—that the defendant killed, attempted to kill, or intended that a killing occur—could be made in the first instance by a state supreme court, and that the state court's finding would be entitled to a presumption of correctness on federal habeas review. The Court noted, however, that there are significant limitations on the appellate court's ability to make the findings required by *Enmund:*

> "There might be instances, however, in which the presumption [of correctness] would not apply to appellate factfinding regarding the *Enmund* criteria because appellate factfinding procedures were not 'adequate,' see 28 U. S. C. § 2254(d)(2). For example, the question whether the defendant killed, attempted to kill, or intended to kill might in a given case turn on credibility determinations that could not be accurately made by an appellate court on the basis of a paper record . . . . The possibility that such cases falling within the § 2254(d)(2) exception may exist, however, does not excuse the habeas court of its obligation to examine the entire state process to determine whether the *Enmund* findings

have been made, for it is by no means apparent that appellate factfinding will always be inadequate. For example, in some cases it may be possible to determine the *Enmund* issue adversely to the defendant even if credibility issues and other ambiguities in the record are resolved in his or her favor." 474 U. S., at 388, n. 5.

*Bullock*, it seems to me, stands only for the proposition that an appellate court may make *Enmund* findings based on a "summary judgment" standard, viewing the evidence in the light most favorable to the defendant. This Court in that case did not hold that an appellate court may make *Enmund* findings that turn on disputed issues of fact. And it certainly did not hold that an appellate court may assess the weight of mitigating evidence without observing the defendant and his witnesses.

The Court's reliance on *Wainwright* v. *Goode*, 464 U. S. 78 (1983), is misplaced. The trial error alleged in *Goode*—reliance on a "future dangerousness" aggravating circumstance —was an error of state law only. This Court has said that the Constitution does not forbid consideration of future dangerousness as a factor in capital sentencing, see *Jurek* v. *Texas*, 428 U. S. 262 (1976); insofar as the Eighth Amendment is concerned, Goode had received an error-free sentencing procedure at the trial level. The Florida Supreme Court's independent reweighing of aggravating and mitigating factors, this Court held, was sufficient to ensure that state law was not applied in so haphazard a fashion as to produce "an arbitrary or freakish sentence forbidden by the Eighth Amendment." 464 U. S., at 87. *Goode* supports only the unremarkable proposition that errors of state law are not ordinarily the concern of federal courts, see *id.*, at 86 (citing *Barclay* v. *Florida*, 463 U. S. 939, 957–958 (1983) (plurality opinion)), and that state appellate courts are given broad latitude in their review of state-law claims. The decision does not support the majority's conclusion that a state supreme court itself may impose a capital sentence in a case

where the trial-level sentencing procedure failed to satisfy federal constitutional requirements.

The Court also states that in *Spaziano* v. *Florida,* 468 U. S. 447 (1984), "we upheld the Florida death penalty scheme permitting a trial judge to override a jury's recommendation of life even though there were no written jury findings." *Ante,* at 750. But our conclusion in *Spaziano*— that evidence relevant to the capital sentencing decision can be adequately assessed by a trial judge *who has witnessed the testimony*—is irrelevant to the question whether such an assessment can be made on the basis of a cold record. The majority's immediately following and conclusory assertion that "[a]n appellate court also is able adequately to evaluate any evidence relating to mitigating factors without the assistance of written jury findings" simply emerges from nowhere.

Indeed, the Court's reliance on *Spaziano*—reflecting an implicit assumption that trial and appellate judges somehow are interchangeable—is symptomatic of the confusion that seems to me to characterize the majority opinion. To support its conclusion that appellate reweighing is permissible, the majority notes: "It is a routine task of appellate courts to decide whether the evidence supports a jury verdict and in capital cases in 'weighing' States, to consider whether the evidence is such that the sentencer could have arrived at the death sentence that was imposed. . . . [A] similar process of weighing aggravating and mitigating evidence is involved in an appellate court's proportionality review." *Ante,* at 748–749. The majority thus equates the reviewing function of an appellate court with the trial judge's initial assessment of the evidence. In fact, however, both this Court and the Supreme Court of Mississippi repeatedly have emphasized that appellate courts are institutionally incapable of fulfilling the distinct functions performed by trial judges and juries.[15]

---

[15] I also am unconvinced by the majority's reliance on the principle that "meaningful appellate review of death sentences promotes reliability and consistency." *Ante,* at 749. As to consistency: the State's interest in

The Supreme Court of Mississippi itself has said that "even if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review. The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire." *Gavin* v. *State*, 473 So. 2d 952, 955 (1985). See also, *e. g.*, *Cook* v. *State*, 467 So. 2d 203, 204 (Miss. 1985) ("[W]e have no choice but to accord great respect and deference to verdicts by properly instructed juries, for the chances of error and injustice in any determination we might make would be infinitely greater than is the case where those findings are made by an impartial jury drawn from a fair cross-section of the community"); *Hall* v. *State*, 427 So. 2d 957, 960, n. 3 (Miss. 1983) ("We emphasize that we are not here making findings of fact on conflicting evidence. Appellate courts do not do this"). In the capital context that court has stressed: "Under our law the jury is the sole player in the judicial process who may vote to send an accused to die. They alone make that determination and all review is then conducted with a presumption of its correctness." *Wiley* v. *State*, 449 So. 2d 756, 762 (1984). See also *Leatherwood* v. *State*, 539 So. 2d 1378, 1389 (Miss. 1989) ("It matters not, however, whether the record is now complete, for the [evidence] must first be presented to the circuit court jury. The circuit court

---

ensuring that uniform standards apply in capital cases does not require that the state supreme court impose the sentence in the first instance. That goal could equally be served by rigorous proportionality review. As to reliability: the principal value of appellate review is that "two heads are better than one"; the reviewing court may spot the errors made by the initial sentencer. But when the state supreme court *is* the initial sentencer, there is no appellate review, except, possibly, in the rare case when this Court grants certiorari. Our recognition that trial-level sentencing plus appellate review is better than trial-level sentencing alone does not support the Court's conclusion that appellate sentencing itself is sufficient to satisfy constitutional requirements.

jury sits as factfinder and sentencer, and it is that body, not this Court, which should make all of the credibility determinations that go along with the exercise of that duty"); *White* v. *State*, 532 So. 2d 1207, 1220 (Miss. 1988) ("As in other cases, our scope of review is limited. We must view the evidence and all reasonable inferences which may be drawn therefrom in the light most consistent with the verdict. We have no authority to disturb the verdict short of a conclusion on our part that upon the evidence, taken in the light most favorable to the verdict, no rational trier of fact could have found the fact at issue beyond a reasonable doubt"); *Williams* v. *State*, 445 So. 2d 798, 811 (Miss. 1984) (review of jury's finding of aggravating circumstances involves "nothing more than the familiar test we apply when a defendant argues here that the trial judge should have entered a judgment of acquittal notwithstanding the verdict of the jury"), cert. denied, 469 U. S. 1117 (1985).[16]

As noted earlier, the Mississippi Supreme Court never has held that the evidence failed to support a jury's finding that a particular murder was "especially heinous, atrocious or cruel." The court is required to undertake a proportionality review whenever it affirms a sentence of death, but on only one occasion has a capital sentence been invalidated solely on the ground that it was disproportionate to the offense.[17] These

---

[16] Indeed, in another section of its opinion in the case before us, the Supreme Court of Mississippi rejected petitioner's claim that the evidence failed to support the jury's sentence. The court stated: "The jury is the factfinder and, in the present case, found that the aggravating circumstances outweighed the mitigating circumstances presented by Clemons. This Court is bound by that finding of the jury." 535 So. 2d 1354, 1361 (1988).

[17] See *Coleman* v. *State*, 378 So. 2d 640 (1979). See also *Edwards* v. *State*, 441 So. 2d 84 (Miss. 1983); *Bullock* v. *State*, 525 So. 2d 764 (Miss. 1987) (on remand from this Court's decision in *Cabana* v. *Bullock*, 474 U. S. 376 (1986)). In *Edwards* and *Bullock*, three of the Mississippi Supreme Court's nine justices concluded that a sentence of death would be disproportionate to the defendant's crime. Since other justices in each

facts do not prove that the Supreme Court of Mississippi has failed to fulfill its proper function. The facts *do* show, however, that its function has been that of an *appellate* court, reviewing the decisions of sentencing juries with a heavy measure of deference. The Mississippi Supreme Court has emphasized repeatedly that it lacks both the authority and the institutional competence to determine the appropriate sentence as an initial matter. Yet when deference to the jury's role as the sentencing body would require that a new sentencing hearing be convened, this Court's majority of today strongly encourages the state court to adopt, instead, a radically different conception of its institutional role.

Like the Mississippi Supreme Court, this Court, too, has emphasized that trial and appellate tribunals respectively perform distinct functions. In explaining the requirement that courts of appeals must defer to district court findings of fact unless these findings are clearly erroneous, it has noted that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson* v. *Bessemer City,* 470 U. S. 564, 575 (1985).[18]  The Federal

---

case believed on other grounds that the case should be remanded for a new sentencing hearing, there was no majority in favor of any particular disposition and the defendants were sentenced to life imprisonment. In *Bullock,* the three justices who believed the death sentence to be disproportionate based their conclusion on the fact that "when you review all of the other capital cases decided since [1980], no capital defendant has had a death sentence affirmed in this state where the sole finding was that he contemplated lethal force." 525 So. 2d, at 770. It therefore bears noting that Chandler Clemons' jury found only that Clemons contemplated that lethal force would be used—not that he killed or attempted to kill.

[18] See *Boyd* v. *Boyd,* 252 N. Y. 422, 429, 169 N. E. 632, 634 (1930) ("Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth . . . . How can we say the judge is wrong? We never saw the witnesses . . . . To the sophistication

Rules, of course, are not of constitutional stature; the States are not required to mimic the federal system in their allocation of responsibilities between trial and appellate courts. But, given the heightened concern for reliability when a sentence of death is imposed,[19] I find inexplicable the majority's willingness in a capital case to countenance the resolution of disputed factual issues by means of a procedure that this Court has deemed insufficiently reliable even for the adjudication of a civil lawsuit.

In a variety of contexts, moreover, this Court has attached *constitutional* significance to an individual's interest in presenting his case directly to the finder of fact. In *Rock* v. *Arkansas*, 483 U. S. 44, 51, n. 8 (1987), we noted that "there [is] no longer any doubt that the right to be heard, which is so essential to due process in an adversary system of adjudication, [can] be vindicated only by affording a defendant an opportunity to testify before the factfinder." We have recognized that the Confrontation Clause serves to afford a criminal defendant the privilege "of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* v. *United States*, 156 U. S. 237, 242–243 (1895). Outside the criminal context, the Court has held that termination of benefits under the Aid to Families with Dependent Children program must be preceded by a hearing, since "[p]articularly where credibility and veracity are at

and sagacity of the trial judge the law confides the duty of appraisal . . . . His was the opportunity, the responsibility and the power to decide"). See also *United States* v. *Oregon State Medical Society*, 343 U. S. 326, 339 (1952) (quoting *Boyd*); *Wainwright* v. *Witt*, 469 U. S. 412, 434 (1985) (same); *Marshall* v. *Lonberger*, 459 U. S. 422, 434 (1983) (same).

[19] See, *e. g.*, *California* v. *Ramos*, 463 U. S. 992, 998–999 (1983) ("The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination").

issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision." *Goldberg* v. *Kelly*, 397 U. S. 254, 269 (1970). See also *Morrissey* v. *Brewer*, 408 U. S. 471, 489 (1972) (when parole is revoked, parolee is constitutionally entitled to an "opportunity to be heard in person"). It stands the Eighth Amendment on its head to suggest that these concerns somehow become less pressing when a sentence of death is imposed.[20]

In part, therefore, the impropriety of appellate sentencing rests on the appellate court's diminished ability to act as a factfinder. But I think there is more to it than that. An appellate court is ill suited to undertake the task of capital sentencing, not simply because of its general deficiencies as a factfinder, or because the costs of erroneous factfinding are so high, but also because the capital sentencing decision by its very nature is peculiarly likely to turn on considerations that cannot adequately be conveyed through the medium of a written record. In *Caldwell* v. *Mississippi*, 472 U. S. 320 (1985), this Court emphasized that

> "an appellate court, unlike a capital sentencing jury, is wholly ill-suited to evaluate the appropriateness of death in the first instance. Whatever intangibles a jury might consider in its sentencing determination, few can be gleaned from an appellate record. This inability to confront and examine the individuality of the defendant would be particularly devastating to any argument for consideration of what this Court has termed '[those]

---

[20] For essentially the same reasons, I think it would be inappropriate for the Mississippi Supreme Court to determine, on the basis of a paper record, whether this murder fits within the *Coleman* definition of "especially heinous, atrocious or cruel." Moreover, even if such a determination could be made, the inquiry would not be at an end. The possibility would remain that the jury, in balancing the aggravating circumstances against the mitigating evidence, had attached weight to factors (such as the personal characteristics of the victim or the wickedness of murder generally) that do not fall within the *Coleman* definition.

compassionate or mitigating factors stemming from the diverse frailties of humankind.' *Woodson* [v. *North Carolina*, 428 U. S. 280, 304 (1976)]. When we held that a defendant has a constitutional right to the consideration of such factors [citing *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), and *Lockett* v. *Ohio*, 438 U. S. 586 (1978)], we clearly envisioned that that consideration would occur among sentencers who were present to hear the evidence and arguments and see the witnesses." *Id.*, at 330–331.[21]

The petitioner in this case, for example, argued that his remorse for the crime constituted a mitigating factor. It would verge on the surrealistic to suggest that Chandler Clemons' right to present that contention would be adequately protected by an appellate court's consideration of the written transcript of his testimony. More than any other decision known to our law, the decision whether to impose the death penalty involves an assessment of the defendant himself, not simply a determination as to the facts surrounding a particular event. And an adequate assessment of the defendant — a procedure which recognizes the "need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual," *Lockett* v. *Ohio*, 438 U. S. 586, 605 (1978) (plurality opinion)—surely requires a sentencer who confronts him in the flesh. I therefore conclude that a capital defendant's right to present mitigating evidence cannot be fully realized if that evidence can be submitted only through the medium of a paper record. I also believe that, if a sentence of death is to be imposed, it should be pronounced by a decisionmaker who will look upon the

---

[21] The majority opinion today includes a single, perfunctory reference to *Caldwell*, citing it for the bland proposition that "appellate courts may face certain difficulties in determining sentencing questions in the first instance." *Ante*, at 754. The majority does not attempt to reconcile its decision with *Caldwell*'s analysis of the institutional limitations of appellate courts.

face of the defendant as he renders judgment.   The bloodless alternative approved by the majority conveniently may streamline the process of capital sentencing, but at a cost that seems to me to be intolerable.

## III

By now it is settled law that "the penalty of death is qualitatively different" from any other sentence, *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (plurality opinion), and that "this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed," *Lockett* v. *Ohio*, 438 U. S., at 604 (plurality opinion).   Our Eighth Amendment jurisprudence reflects the conviction that state procedures that satisfy constitutional requirements in the general run of criminal prosecutions may nevertheless be inadequate when a defendant's life is at stake.   Against this backdrop, I find extraordinary the majority's eagerness to approve a capital sentencing procedure that the Mississippi Supreme Court has shown no clear inclination to adopt,[22] that appears to have no analogue

---

[22] The Mississippi Supreme Court's decision in *Johnson* v. *State*, 511 So. 2d 1333 (1987), rev'd, 486 U. S. 578 (1988), on remand, 547 So. 2d 59 (1989), is instructive.   The jury had relied on three aggravating circumstances. One of these was invalidated by this Court; on remand, the Mississippi Supreme Court indicated that the "especially heinous, atrocious or cruel" aggravating circumstance was also invalid in light of *Maynard*.   547 So. 2d, at 60.   The court did not seek to weigh the remaining aggravating factor against the mitigating evidence, nor did it attempt to apply its "limiting construction" of the "especially heinous, atrocious or cruel" aggravating circumstance.   Rather, it remanded for a new sentencing hearing on the ground that "[w]e cannot know what the sentence of that jury would have been in the absence of this aggravating circumstance."   *Id.*, at 61.

The Court argues that reweighing in this case would not be inconsistent with the result in *Johnson*, since Johnson's jury relied on *two* invalid aggravating factors and was exposed to inadmissible evidence.   See *ante*, at 759, n. 5.   These distinctions would surely affect the Mississippi Supreme Court's ability to review for *harmless error:* the more deeply tainted the jury's verdict, the more difficult it is to say with assurance what the verdict would have been had the taint been eliminated.   But the Mississippi

in other areas of Mississippi law, and that flies in the face of this Court's prior warnings concerning the institutional limitations of appellate courts.[23]

Supreme Court's ability to reweigh valid aggravating factors against mitigating evidence (without consideration of improperly admitted evidence) should not be affected by the number of invalid aggravating circumstances originally submitted.

[23] I am less troubled by the majority's suggestion that harmless-error analysis might sometimes be applicable when an aggravating circumstance found by the jury is later determined to be invalid. The Court has held that harmless-error principles apply to capital sentencing. *Satterwhite* v. *Texas*, 486 U. S. 249 (1988). Unlike appellate reweighing, harmless-error analysis reflects deference to the trial-level sentencer, and review for harmless error is almost a routine undertaking of appellate courts. In *Blystone* v. *Pennsylvania, ante,* p. 299, this Court held that a State may require the death penalty when the sentencer finds one or more aggravating circumstances and no mitigating factors. If a jury operating under such a statute found two or more aggravating circumstances and no mitigating factors, and one of the aggravating circumstances was invalidated on appeal, I must now agree that the jury's reliance on the improper factor would be harmless beyond a reasonable doubt.

It would be the rare case, however, in which it could truly be said beyond a reasonable doubt that a sentencing decision would have been the same in the absence of an invalid aggravating circumstance. Harmless-error analysis would be especially problematic (if not impossible) in Mississippi, where the jury is not required to make written findings concerning mitigating circumstances, and where the jury need not impose a death sentence even if aggravating factors outweigh those in mitigation. It is clear to me that the error in the present case could not be deemed harmless beyond a reasonable doubt. As the majority notes, *ante,* at 753–754, the prosecutor's emphasis on the "especially heinous, atrocious or cruel" aggravating circumstance makes it difficult to say with any assurance that the jury's sentence would have been the same had "robbery for pecuniary gain" been the only aggravating factor. Nor could it be said beyond a reasonable doubt that the jury would have considered the murder to be "especially heinous, atrocious or cruel" had it been informed of the Mississippi Supreme Court's "limiting construction." Though the victim did not die instantaneously, there is no evidence of prolonged physical suffering; there is no evidence that petitioner intended the victim to suffer; and there is no finding that petitioner was the triggerman. In arguing for this aggravating circumstance, the prosecutor relied in part on the physical

The one consolation, in my view, lies in the possibility that the Supreme Court of Mississippi will decline the invitation that this Court proffers today. The majority, as I see it, has abdicated its responsibility to enforce federal constitutional norms. That failure, however, cannot absolve the Mississippi Supreme Court of its duty to apply state procedural rules in a fair and consistent manner. The Supreme Court of Mississippi repeatedly has stated that it cannot and will not fulfill the role that the majority suggests for it today. Despite this Court's decision, it is still the responsibility of the Mississippi Supreme Court to ensure that "[t]here will be no short cuts to the execution chamber." *Pinkton* v. *State*, 481 So. 2d 306, 310 (Miss. 1985).

---

pain suffered by the victim, but also stressed the victim's youth and industriousness—characteristics that have nothing to do with the *Coleman* definition. See 7 Record 1192–1193. (In another portion of his closing argument, the prosecutor emphasized the admonition in Numbers 35:9–34 that "[t]he murderer shall surely be put to death." 7 Record 1196–1198.) I do not believe that it can be said with any assurance that the jury would have found this aggravating factor had it been properly instructed.