LEWIS, Circuit Judge,
dissenting.
As the cases before us in these appeals make abundantly clear, the death penalty has become the source of an increasingly vast and enormously complex body of constitutional law, posing issues which often defy clear or even sound resolution. Likewise, the immense implications that are at the core of our effort to correctly resolve these issues simply cannot be overstated. Both Bailey and Flamer raise profound and difficult questions about the application of Delaware’s capital sentencing scheme to their cases. Because I cannot agree with the resolution of these issues by the majority of my colleagues, I respectfully dissent.
To begin, I agree with the majority that the plain language of the Delaware capital sentencing scheme suggests that it is a “non-weighing” scheme,[1] and that under the Delaware statute, the sentencing body may weigh all relevant evidence in aggravation and mitigation. See Del.Code.Ann. tit. 11, § 4209(d)(1). I agree with petitioners, however, that jury interrogatory #3 and the corresponding portion of the jury instruc *765 tions converted the Delaware sentencing scheme, as applied, into a “de facto” weighing scheme.[2]
It is, perhaps, of even greater importance, however, that the differences between “non-weighing” and “weighing” capital sentencing schemes are not restricted to the scope of evidence a jury is entitled to rely upon during the penalty phase of a capital trial. As I discuss in greater detail below, and as the majority explicitly acknowledges, these differences extend to affect the standard of review that courts apply when determining the constitutionality of a death sentence. It is this latter point which renders the correct resolution of the “character” of the sentencing regime at issue in these cases of such profound constitutional and practical significance.
I gather that the majority and I agree that the chief culprit lurking behind the issues we must address may be singled out and identified as the now infamous interrogatory #3. Interrogatory #3, in my view, mistakenly suggested to the juries that at the selection stage, they were required to weigh statutory aggravating factors against any mitigating evidence, and that they could not impose a death sentence without relying upon one or more of those factors. I believe that by suggesting such a limitation, interrogatory #3 injected into the sentencing process a “weighing” aspect, thereby transforming Delaware’s statutory “non-weighing” scheme into a “weighing” scheme as applied.
The majority suggests that “[t]he worst that can fairly be said of the wording of [interrogatory # 3] is that it might be read to suggest that the jury could not recommend a death sentence unless it relied, at least in part, on a statutory aggravating circumstance.” Maj.Op. at 752. The majority continues:
[E]ven if ... the juries had been left with the mistaken belief that they could consider only the statutory aggravating eircum-stance[s] at the selection step, we are at a loss to understand how this could have materially prejudiced these defendants. It is not claimed that interrogatory #3 restricted the juries in their consideration of any evidence in mitigation, ie., any evidence that might have been helpful to the defendants.... [I]t simply makes no sense to argue that death sentences should be overturned because the juries were unduly restricted in their consideration of the evidence militating in favor of the death penalty.
Id. at 752. The majority’s inability to understand how the juries’ mistaken belief could have prejudiced the defendants flows directly from what I perceive as its misunderstanding of the primary issue before us. It is not hard to see how such a misunderstanding could occur. Unfortunately (considering what is at stake), this area of the law is replete with nuances which require us to reach conclusions based upon inferences, and the appropriate analytical formulae shift depending upon how these underlying issues are perceived. Regrettably, as I will discuss later, neither the Supreme Court nor, in this case, the Delaware Supreme Court, have provided much helpful guidance. Yet achieving a proper understanding of the most fundamental issues here is critical, because the differences in the resulting analyses are, as I have said, of both constitutional and practical significance.
The primary issue we must address is not, as the majority suggests, whether interrogatory # 3 prevented the consideration of constitutionally relevant evidence, or whether it permitted the consideration of constitutionally impermissible evidence. Rather, the issue before us is whether interrogatory # 3 transformed the Delaware capital sentencing scheme into a “weighing” scheme, thereby signalling that the analytical framework under which these eases should be reviewed is the one set forth in Clemons v. Mississippi 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); or whether Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), provides the pertinent standard for deciding if the death sentences in these cases were rendered unconstitutional by the con *766 sideration of constitutionally invalid statutory aggravating factors.[3]
Determining whether Clemons or Zant provides the proper lens through which to view these cases is nothing less than crucial because, as the majority acknowledges, under Clemons, if the jury in a “weighing” state relies upon one or more invalid statutory aggravating factors at the selection stage, “the[ ] death sentences cannot stand unless there is a judicial reweighing of the evidence without consideration of the invalid circumstances,” Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); Clemons, 494 U.S. at 744-45, 110 S.Ct. at 1446-47. In “non-weighing” states, however, where the role of statutory aggravating factors is to “circumscribe the class of persons eligible for the death penalty,” Zant, 462 U.S. at 878,103 S.Ct. at 2743, a death sentence will not be disturbed so long as one valid statutory aggravating factor remains. See id. at 873-74, 103 S.Ct. at 274(M1. In other words, the correct characterization of the statutory scheme, under the unique circumstances of these cases, determines the appropriate standard of review which, in turn, has a direct bearing upon both the nature and the degree of relief to which the petitioners might be entitled, if any. Accordingly, a full appreciation of the differences between my view and that of the majority in these cases requires, first and foremost, an understanding of the distinctions — some, subtle; some, explicit; all, significant — between “non-weighing” and “weighing” capital sentencing schemes. And while the majority addresses these distinctions, I believe that they merit further discussion because of their importance to these eases.
Courts have cited a variety of factors in attempting to explain the differences between “non-weighing” and “weighing” capital sentencing schemes,[4] many of which fail to capture the true distinctions between these two types of statutes. For example, the Delaware Supreme Court itself has reasoned that its statute is “non-weighing” because although:
the jury ... is told to weigh and consider certain circumstances, the fact that they are not told how to weigh them and that this “weighing” occurs at the discretionary stage, renders defendant’s argument [that Delaware is a weighing state] meaningless.
Flamer v. State, 490 A.2d 104, 131-36 (Del.1983). With all due respect, the Delaware Supreme Court’s explanation of why its statute is “non-weighing” does not adequately address the most important distinction between these types of schemes.[5] In fact, the fundamental difference between a “non-weighing” and “weighing” statute is that under the former, the jury is allowed to consider in aggravation any evidence presented during the guilt or sentencing phases of the trial. As a result, in a “non-weighing” state, statutorily enumerated aggravating factors do not play a specific role in the jury’s punishment determination. Put differently, the jury in a “non-weighing” state is not required — and, indeed, is not permitted — to weigh statutory aggravating factors as such in deciding whether to impose the death penalty. They are, however, free to consider the underlying facts that constitute the statutory aggravating factors. By contrast, under a “weighing” scheme, the jury can only consider statutorily enumerated aggravating factors in making its sentencing determination.
In practice, therefore, the “non-weighing”/“weighing” distinction logically and conceptually is better understood as a “non-limiting”/“limiting” distinction; that is, what differentiates a “non-weighing” from a “weighing” statutory scheme is not what weight is placed on aggravating circumstances, but rather whether the jury is limited to considering only statutory aggravating *767 factors in deciding whether to impose a sentence of death.
It is essential to keep in mind that the reason why appellate scrutiny of the import and effect of invalid aggravating factors under the two schemes is different is because of the distinctly dissimilar roles that aggravating factors play in “weighing” and “non-weighing” schemes. As I discussed earlier, in a “non-weighing” state, statutory aggravating factors “[do] not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons ... who are eligible for the death penalty.” Zant, 462 U.S. at 873, 103 S.Ct. at 2740.
Because I believe that, through interrogatory # 3, statutory aggravating circumstances were given a specific function in guiding the juries’ discretion at the selection stage, I cannot agree with the majority’s conclusion that the Delaware scheme, as applied in these cases, is “non-weighing.” Indeed, the Supreme Court has recognized as a distinctive element of a “non-weighing” scheme that statutory aggravating circumstances as such have “no specific function in the jury’s decision whether a defendant who has been found to be eligible for the death penalty should receive it.” Stringer, 503 U.S. at 229-30, 112 S.Ct. at 1136.[6]
Although the majority acknowledges that interrogatory #3 is “potentially misleading and injects unnecessary confusion into the jury’s deliberations,” Maj.Op. at 754, and, in fact, “disapprove[s] of the practice of a judge in a non-weighing state using a jury interrogatory that asks which statutory aggravating circumstances the jury ‘relied upon’ in recommending the death penalty,” it fails, in my opinion, to appreciate the constitutional significance of requiring that statutory aggravating circumstances play a role at the selection stage. The majority chooses to focus instead on (1) whether it is reasonably likely that interrogatory # 3 mistakenly suggested to the juries that, at the selection step, they could not rely on non-statutory aggravating circumstances but were limited to those aggravating circumstances set out in the Delaware statute, Maj.Op. at 751, and (2) whether interrogatory # 3 led the juries to give much greater weight or consideration to the facts underlying the invalid statutory aggravating circumstances than those facts would otherwise have received. Maj.Op. at 753. I will address these two issues in turn.
I note initially that these cases are distinguishable from Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), relied upon by the majority, wherein the Supreme Court first adopted the “reasonable likelihood” standard of review for jury instructions. Consequently, I am not convinced that the Boyde inquiry is relevant in these cases.
In Boyde the issue was whether “the challenged instructions preclude[d] consideration of relevant mitigating evidence offered by the petitioner.” Boyde, 494 U.S. at 386, 110 S.Ct. at 1201. In subsequent eases, the Boyde standard has been applied to determine ‘“whether there is reasonable likelihood that the jury applied the challenged instruction in a way’ that violates the Constitution,” Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed. 385, 399 (1991) (quoting Boyde, 494 U.S. at 380, 110 S.Ct. at 1198), and whether there was a “reasonable likelihood” that the jury understood the charge to create an unconstitutional presumption. Rock v. Zimmerman, 959 F.2d 1237, 1247 (3d Cir.1992). I believe the challenge to the jury instructions in these cases *768 is unique. The petitioners here do not simply claim that interrogatory # 3 was constitutionally impermissible; rather, they argue that interrogatory # 3 injected into the capital sentencing process a “weighing” aspect, thereby requiring that appellate review be conducted under Clemons instead of Zant.
But even if I were to agree with the majority that the Boyde standard applies in these cases, the relevant inquiry would be whether there is a reasonable likelihood that the juries thought they were required to rely on one or more statutory aggravating circumstances in order to impose a sentence of death. Although I believe that there is a reasonable likelihood that interrogatory # 3 led the juries to believe that they were required to rely only on statutory aggravating circumstances, I disagree with the majority that this finding is necessary in order to conclude that the Delaware statute as applied in these cases was weighing. To the contrary, if interrogatory # 3 induced the juries into believing that they were required to rely on one or more statutory aggravating circumstances in order to recommend the death penalty, that belief alone would suffice to convert Delaware’s facially “non-weighing” scheme into a “weighing” scheme as applied in these eases, because the only logical conclusion is thát they also believed they were required to weigh those statutorily defined aggravating circumstances against any mitigating evidence offered by petitioners.
That said, I believe the clear inference to be drawn from the language of interrogatory #3 is that the death penalty could not be imposed unless the juries relied upon one or more statutory aggravating circumstances. Significantly, the juries were not asked to indicate which, if any, statutory aggravating circumstances were relied upon in reaching the decision to recommend the death penalty. They were specifically instructed to “indicate which statutory aggravating circumstance or circumstances were relied upon.” See Appendix B, supra, at 761; Appendix D, supra, at 763-64 (emphasis added). Furthermore, nothing in the record indicates that the judges in these cases ever told the juries that they were not required to rely on statutory aggravating circumstances.[7]
In Bailey’s case in particular, the potential for confusion as a result of this misleading instruction was exacerbated by the fact that the State never argued to the jury that there were non-statutory aggravating factors relevant for purposes of sentencing.[8] And although the judge may have instructed the jury that the State was allowed to “offer matters in aggravation besides statutory aggravating circumstances”, Appendix A, supra, at 759, there is no indication in the record that the State ever argued that such evidence existed. The impact of the jury instructions, and interrogatory # 3 in particular, must be judged with this glaring omission in mind.
To more vividly demonstrate my point, I pose the following hypothetical which I be *769 lieve illustrates why the jurors in Bailey’s ease were very likely left with the erroneous impression that they only could consider statutory aggravating factors in determining sentencing. Suppose that twelve laypersons are selected to act as an admissions committee for a university. As part of their orientation for the job, the group is required to attend a three-day training session where they are presented with large amounts of information relevant to the admissions process in general, and to their jobs as admissions officers in particular. Throughout the session, however, the group instructor continuously places emphasis only on four admissions criteria: (1) grades; (2) SAT scores; (3) extracurricular activities; and (4) recommendations.
At the final training session the group is told by their instructor that anything that is relevant for the purposes of evaluating an applicant can be relied upon by their committee, yet they are not given any specific indication of what factors other than grades, SAT scores, extracurricular activities and recommendations might qualify as relevant information, leaving these four factors as the only ones that specifically were identified. When the session ends, the committee is given a booklet that includes the training session information which focuses on the four factors, and a checklist with the following instructions:
Once you unanimously have agreed that an applicant should be admitted, please indicate on this written checklist the factor or factors you relied upon in deciding to admit the candidate.
These instructions are then followed with a checklist of four options:
1. Grades_
2. SAT Scores _
3. Extracurricular Activities _
4. Recommendations ._
In my opinion, just as there is a reasonable likelihood that a member of our admissions committee could conclude that the only factors they could rely on in the admission process were the four set-out on the checklist, it is also quite likely that the jury in Bailey’s case thought that it was limited to considering in aggravation only those statutory circumstances listed on interrogatory # 3. Thus, because the jury in Bailey’s case was given instructions and interrogatories that reasonably could have lead it to deliberate as if operating under a “weighing” rather than “non-weighing” capital sentencing scheme, I believe Clemons provides the applicable standard of review.
Although I acknowledge that juries in “weighing” states are limited in their consideration of aggravating evidence to those aggravating circumstances enumerated in the statute, i.e., those factors which the legislature deemed relevant to the sentencing decision, I do not believe, as the majority does, that unless a jury is so limited, appellate scrutiny of the impact of invalid aggravating factors must be conducted under Zant. Accordingly, even though the prosecution in Flamer’s case urged the jury to consider non-statutory aggravating factors in making its sentencing determination, in my view, Clemons still applies because the jury was also specifically instructed to weigh — and in fact did rely on — statutory aggravating circumstances.
The Supreme Court has never, to my knowledge, explicitly answered the question presented in these cases, namely, whether Clemons or Zant control when a death sentence is imposed under what is best described as a “hybrid” scheme — one which consists of both “weighing” and “non-weighing” characteristics. Again, because it is my belief that the introduction into the sentencing process of what I have referred to as a “weighing” aspect cannot be overlooked; I do not believe that these cases should be reviewed under Zant. Unlike Zant, in these cases, we know that a constitutionally invalid statutory aggravating factor was relied upon by the juries in recommending the death penalty; that is, we know that it was weighed against the mitigating evidence. Because allowing the sentencer to consider “a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty,” Stringer, 503 U.S. at 235, 112 S.Ct. at 1139, we “may not assume it would have made no difference if the thumb had been *770 removed from death’s side of the scale.” Id. 1139, 503 U.S. at 232, 112 S.Ct. at 1137.
Although I do not believe that Zant provides the appropriate analytical framework for review of these cases, I will briefly address the majority’s analysis under Zant.
Despite the majority’s conclusion to the contrary, these cases are distinguishable from Zant because the issue here is not, as it was in Zant, whether the challenged instruction “caused the jury to give somewhat greater weight [to the invalid statutory aggravating factors] than it otherwise would have given,” Zant, 462 U.S. at 888, 103 S.Ct. at 2748.[9] In these cases, we are not dealing with the amount of weight that should be given to particular aggravating evidence. Instead, we must determine whether imper-missibly vague aggravating factors can, without violating the Constitution, be given a specific function at the selection stage. The question we confront is not one of weight or, as the majority suggests, whether the facts underlying the vague factor are admissible and proper for consideration,[10] but a question of whether a weighing aspect may permissibly be injected at the imposition stage of a “non-weighing” scheme. This distinction may appear subtle, but it is significant because it directs us to the proper inquiry in these cases, i.e., whether interrogatory #3 induced the juries to believe that they were required to rely on a statutory aggravating factor in order to impose the death penalty.
Because, as I have already stated, I believe that the clear inference to be drawn from interrogatory #3 (and the jury instructions as a whole) is that the juries could not impose a death sentence without relying upon one or more statutory aggravating factors, it is my opinion that statutory aggravating fae-tors served both a narrowing and a weighing function in these cases. I also believe that, in a “non-weighing” scheme, once a single statutory aggravating factor is found and the defendant is deemed death-eligible, statutory aggravating circumstances are to play no role in guiding the jury’s discretion in reaching a sentencing determination. The fact that the statutory aggravating circumstances were given such a role in these cases leads me to the conclusion that petitioners’ sentences were imposed in violation of the Constitution.
Having concluded that the sentencing process in each of these cases contained a constitutional error, the question arises whether courts of appeal are required to conduct a harmless error analysis. There is a split among the circuits as to whether a federal habeas court must conduct a harmless error analysis when reviewing a capital sentencing proceeding that involved an invalid statutory aggravating circumstance. Compare Smith v. Dixon, 14 F.3d 956, 974-81 (4th Cir.1994) (in banc) (holding that a federal habeas court must review constitutional errors of the state trial and sentencing proceedings for harmlessness) and Williams v. Clarke, 40 F.3d 1529, 1539-40 (8th Cir.1994) (same) with Wiley v. Puckett, 969 F.2d 86, 94 n.8 (5th Cir.1992) (holding that federal courts may not conduct harmless error analysis in the context of invalid statutory aggravating circumstances in capital sentencing proceeding) and Dixon, 14 F.3d at 988-93 (Sprouse, J. dissenting).
The Supreme Court has never explicitly authorized federal habeas courts to engage in the type of constitutional harmless error *771 analysis that the Clemons Court authorized for capital sentencing proceedings. Nor has the Court foreclosed us from engaging in the analysis. Williams v. Clarke, 40 F.3d 1529, 1539 (8th Cir.1994). The Court’s opinions authorizing harmless error analysis to remedy constitutional errors resulting from the consideration of a vague sentencing factor expressly refer only to state appellate courts. See, e.g., Richmond v. Lewis, 506 U.S. 40, -, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992) (“[O]nly constitutional harmless-error analysis or reweighing at the trial level suffices to guarantee that the defendant received an individualized sentence. Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand”); Stringer, 503 U.S. at 237, 112 S.Ct. at 1140 (holding that “use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system”).
But the Court has “made plain that although a petitioner has demonstrated that his state trial was tainted with constitutional error, when the error is one that may be reviewed for harmlessness, a federal habeas court must not grant habeas relief unless the petitioner also demonstrates that the error ‘had a substantial and injurious effect or influence in determining the jury’s verdict.’ ” Dixon, 14 F.3d at 975 (quoting Brecht v. Abrahamson, — U.S.-,-, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)). Thus, a federal habeas court must determine that the error that occurred in the sentencing proceeding was harmful before it may grant habeas relief.
Under the standard announced in Brecht, I believe that both Bailey and Flamer have met the burden of demonstrating that the constitutional errors which occurred during their sentencing proceedings “had a substantial and injurious effect or influence in determining the jury’s verdiet[s].” Brecht, — U.S. at-, 113 S.Ct. at 1722. In Bailey’s case, interrogatory # 3 reveals that the jury actually relied on two statutory aggravating factors at the selection stage. One of those two factors is invalid, however, because it is unconstitutionally vague. In my opinion, it is reasonable to conclude that the jury may well have reached a different outcome if it had not relied upon the invalid aggravating factor. In other words, the invalid circumstance may well have been the factor that tipped the scale in favor of death. Therefore, I am fairly certain that the error in Bailey’s sentencing proceeding had a “substantial and injurious effect or influence in determining the jury’s verdict.” As a result of this “grave doubt”, I am convinced that the error was not harmless. See O’Neal v. McAninch, — U.S.-,-, 115 S.Ct. 992, 994-95, 130 L.Ed.2d 947 (1995) (“When a federal judge in a habeas proceeding is in grave doubt about whether a trial error ... had a ‘substantial and injurious effect or influence in determining the jury’s verdict,’ that error is not harmless”).
I reach the same conclusion with respect to Flamer, despite the fact that only one of the four statutory aggravating factors upon which the jury relied was invalid, because I believe that it may well have been the invalid circumstance that tipped the scale in favor of death. Although the jury in Flamer’s case indicated that it had relied on four statutory aggravating circumstances,[11] I nevertheless have grave doubts as to whether the jury would have recommended the death penalty had the invalid factor not been part of the equation. Significantly, two of the remaining valid statutory aggravating circumstances— that the murder was committed while the defendant was engaged in the commission of *772 a robbery and that the murder was committed for pecuniary gain — are, in my opinion, duplicative. Although the existence of the duplicative circumstances does not, itself, constitute constitutional error, I believe it is both proper and necessary to consider the impact of the duplication as part of a harmless error analysis conducted for the purpose of determining whether the jury would have recommended the death penalty had it not relied upon the unconstitutionally vague and invalid aggravating circumstance. Because I believe that the two duplicative factors represent a single aggravating factor and, as a result, that the jury actually relied only upon two valid statutory aggravating factors, I am convinced that the error, i.e., the consideration of a unconstitutionally vague aggravating circumstance, had a “substantial and injurious effect or influence in determining the jury’s verdict.” Where the number of statutory aggravating factors relied upon is so substantially diminished (in this case by 50 percent), not only may we not “assume it would have made no difference if the thumb had been removed from death’s side of the scale,” Stringer, 503 U.S. at 232, 112 S.Ct. at 1137, I believe we are compelled to conclude that the error was not harmless.
For the reasons set forth above, I respectfully dissent.
Although I have concluded that the errors in both trials were not harmless and would, accordingly, reverse the death sentences as to both Bailey and Flamer and remand for reweighing, the tortuous analytical route it has taken both the majority and me to set out our respective views in these cases compels me to add that I believe they perfectly illustrate — perhaps epitomize — why, in the words of Justice Blaekmun, we should “no longer tinker with the machinery of death.” See Callins v. Collins, — U.S. -, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) (Blackmun, J., dissenting).
To be sure, Justice Blaekmun was correct. I realize that I sit on a court charged with the responsibility of applying the law as it is interpreted by the Supreme Court, and in circumstances such as these, by the highest court of a state. That is precisely what the majority and I have sought to do, despite our disagreement. But there are times when it becomes appropriate for a judge to reflect upon the law that he or she is called upon to apply, and to express views, genuine and unfeigned, that reveal a sincere and earnest belief. And in doing so here, I can only say that more than any I have seen, these cases exemplify the extent to which death penalty jurisprudence has become so complex and theoretically abstract that the only way to try to understand the reasons for and impact of its many subtle distinctions is to resort to carefully crafted hypotheticals. Something is terribly wrong when a body of law upon which we rely to determine who lives and who dies can no longer, in reality, reasonably and logically be comprehended and applied; when, in examining a statutory scheme and analyzing instructions and interrogatories, we are left to reach conclusions by piling nuance upon nuance; when we cannot even agree upon the appropriate standard of review in cases in which lives hang in the balance. Yet this is how cluttered and confusing our nation’s effort to exact the ultimate punishment has become. This cannot be what certain fundamental principles of liberty and due process embodied in our Constitution, principles upon which I need not elaborate here, are all about.
It does not dilute my profound respect for the highest court in the land, an admiration and honor that knows no bounds, to voice an apprehension, sincerely felt, that much more guidance in this serious moral dilemma must be forthcoming. Exclusive and complicated distinctions, replete with incomprehensible subtleties of the highest order, must not be the talisman that decides whether one should live or die. Until this guidance is forthcoming, the plaintive voice of Justice Blaekmun, truly crying in the wilderness, should continue to haunt and remind us that “the desired level of fairness has [not] been achieved.”
Joined by Judge MANSMANN and Judge McKEE.

. Although the majority apparently believes that it is crystal clear from the statute’s plain language that Delaware’s capital sentencing scheme is "non-weighing”, a close examination of Delaware Supreme Court case law itself contradicts this view.
In Whalen v. State, 434 A.2d 1346 (Del.1980), Frank Cole Whalen Jr. was tried, convicted and sentenced to death on charges of first degree murder, burglary and rape. At Whalen’s sentencing hearing the jury was instructed to consider as statutory aggravating circumstances, the fact that the victim was "elderly" and “defenseless”. On appeal, citing State v. White, 395 A.2d 1082 (Del.1978), in which the Delaware Supreme Court had held that the "elderly" and "defenseless” statutory aggravating were unconstitutionally vague, Whalen argued that he was entitled to a new sentencing hearing on the ground that the jury had considered invalid statutory aggravating circumstances in determining his sentence. In granting Whalen relief, the Delaware Supreme Court reasoned that although "the defendant was found guilty of rape, itself a statutory aggravating circumstance, we are not prepared to assume the defendant was not prejudiced by this error", a conclusion that could not have been reached under a "non-weighing” statute.
The ruling in Whalen necessarily implies that at a previous point in time the Supreme Court of Delaware treated its capital sentencing scheme as "weighing”. It is, then, at best curious, and at worst flat-out anomalous, that the supreme court's ruling in Flamer v. State, 490 A.2d 104, 131-136 (Del.1983), proclaiming that Delaware's statute is "non-weighing,” made no mention of overruling Whalen and did not attempt to reconcile the two cases. As a result, although it now may be the case that Delaware's statute is "non-weighing,” that has not always clearly been the case.

. For convenience and consistency, I too, will use the term "interrogatory # 3" to refer to both the interrogatory itself and corresponding instructions.

. As the majority notes, the juries in both cases considered an unconstitutionally vague statutory aggravating circumstance, i.e., that “[t]he murder was outrageously or wantonly vile, horrible, or inhuman.” See Del.Code Ann. tit. 11, § 4209(e)(l)n.

. See Williams v. Calderon, 52 F.3d 1465, 1477 n. 13 (9th Cir.1995) (discussing the varying factors courts rely upon to differentiate "weighing” from “non-weighing" capital sentencing schemes.)

.The difference between a “non-weighing” and “weighing” statutory scheme is not primarily based on “how” the jury is told to weigh the evidence, but rather “what” evidence the jury is allowed to consider.

. Some commentators refer to "non-weighing” schemes as "threshold schemes,” and have described the difference between "weighing” and "threshold” schemes as follows:
In a "threshold” state, the sentencer has complete discretion in assessing a sentence once it has found that the defendant passes the death eligible threshold, i.e., once it finds the existence of a single aggravating circumstance. In such a system, aggravating circumstances perform one function: to set the death-eligible threshold. In contrast, aggravating circumstances in "weighing” states perform two functions. Not only do they set the death-eligible threshold, they also guide the jury's decision beyond that point insofar as they are weighed or balanced by the jury against mitigating circumstances in order to arrive at a sentence.
John H. Blume & Stephen P. Garvey, Harmless Error in Federal Habeas Corpus After Brecht v. Abrahamson, 35 Wm. & Mary L.Rev. 163, 192-93 (1993) (footnotes omitted).

. The majority suggests that to the extent that the juries may have felt confused by interrogatory # 3 and possibly conflicting instructions given by the court, it was incumbent upon the juries to seek clarification. Maj.Op. at 752.
I would point out that in capital cases, the Delaware Supreme Court has observed, quite appropriately, that "it is the trial judge's duty to guide the jury’s discretion by ensuring that they understand the bases for imposing a death sentence, and comprehend their responsibilities in applying such criteria. It is only through the careful use of jury instructions that the judge properly discharges this function.” Whalen v. State, 492 A.2d 552, 559 (Del.1986).
More importantly, however, the record clearly reflects the fact that during deliberations in Bailey’s case the jury did seek clarification from the trial judge regarding the "multiple death” statutory aggravating circumstance. In particular, the jury noted that it was "troubled somewhat with the word probable’,” app. at 200(a), contained in the statutory language. In replying to the jury's concerns, the trial judge offered the following response: "I ... want to remind you that you needn't dwell on that ["multiple death”] circumstance too much because, as I have told you in the charge, you have already found that one to exist by virtue of your verdict...." Id. Undoubtedly, this "clarification” only increased the likelihood that the jury was misled into thinking that in the final, discretionary, imposition stage of its deliberations, it was required to rely on the "multiple death” statutory aggravating factor, regardless of any confusion or doubts it might have had about this circumstance.

. As the majority points out, and I acknowledge, the prosecution in Flamer’s case did urge the jury to consider non-statutory aggravating factors in its sentencing determination.

. In Zant, the Supreme Court upheld a Georgia death sentence imposed under a "non-weighing” scheme and agreed with the Georgia Supreme Court that the " 'mere fact that some of the aggravating circumstances were improperly designated statutory' ... did not place particular emphasis on the role of statutory aggravating circumstances in the jury's ultimate decision." Zant v. Stephens, 462 U.S. 862, 889, 103 S.Ct. 2733, 2749, 77 L.Ed.2d 235 (1983). As a result, the Court concluded that any possible impact of the state's “aggravating factor” imprimatur on an otherwise admissible consideration "cannot fairly be regarded as a constitutional defect in the sentencing process.” Id.

. The majority insists that "even if the juries had believed that, they could not consider non-statutory aggravating factors at the selection step, this would not naturally cause the juries to give the facts underlying the invalid statutory aggravating circumstances any greater weight than those facts would have otherwise received.” Maj.Op. 753. In its attempt to confine these cases within the parameters of Zant, the majority refuses to acknowledge that under a "weighing” scheme, the consideration of an invalid factor which, in turn, allows consideration of the circumstances supporting the factor, permits the juiy to include in its sentencing calculus evidence that could not have otherwise been considered. See Williams v. Calderon, 52 F.3d 1465, 1477 (9th Cir.1995).

. The four statutory aggravating circumstances indicated by the Flamer jury in response to interrogatory # 3 were as follows:
(a) The murder was committed while the defendant was engaged in the commission of a robbery.
(b) The defendant's course of conduct resulted in the deaths of two or more persons where the deaths are a probable consequence of the defendant's conduct.
(c) The murder was outrageously or wantonly vile, horrible or inhuman.
(d) The murder was committed for pecuniary gain.
See Appendix B, supra, at 761.