FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK ROGERS,<br>*Petitioner-Appellee/*<br>*Cross-Appellant*,<br><br>v.<br><br>E. K. MCDANIEL; CATHERINE<br>CORTEZ MASTO,<br>*Respondents-Appellants/*<br>*Cross-Appellees*. | Nos. 11-99009<br>11-99010<br><br>D.C. No.<br>3:02-cv-00342-<br>ECR-RAM<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Jr., Senior District Judge, Presiding

Argued and Submitted
June 11, 2015—San Francisco, California

Filed July 16, 2015

Before: Barry G. Silverman, Ronald M. Gould,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The panel affirmed the district court's grant of habeas corpus relief regarding Mark Rogers's death sentence, affirmed the district court's denial of Rogers's motion for a stay based on competency, expanded Rogers's Certificate of Appealability as to several of his guilt-phase claims, vacated the district court's denials of relief on those claims, and remanded for further proceedings.

The panel held that a depravity-of-mind aggravating factor and jury instruction were unconstitutionally vague under clearly established Supreme Court law, and that the error was not harmless.

The panel held that the district court did not abuse its discretion in denying Rogers's motion to stay proceedings due to his purported incompetency.

The panel expanded the COA, vacated the district court's denials of relief as to guilt-phase claims, and remanded for further proceedings because the district court did not have the benefit of many potentially relevant cases decided while Rogers's appeal was pending, including *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc); *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2014); and *Rhines v. Weber*, 544 U.S. 269 (2005).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Catherine Cortez Masto, Attorney General, Robert E. Weiland (argued), Senior Deputy Attorney General, Office of the Nevada Attorney General, Reno, Nevada, for Respondents-Appellants/Cross-Appellees.

Rene Valladares, Federal Public Defender, Michael Pescetta (argued), Tiffani D. Hurst, and Randolph Fiedler, Assistant Federal Public Defenders, Federal Public Defender's Office, Las Vegas, Nevada, for Petitioner-Appellee/Cross-Appellant.

## OPINION

GOULD, Circuit Judge:

Through its officials, the state of Nevada appeals the district court's grant of partial habeas corpus relief to petitioner Mark Rogers, a Nevada prisoner who has been sentenced to death. Rogers cross-appeals from the district court's decision not to stay habeas corpus proceedings due to Rogers's purported incompetency, and also challenges the district court's denial of habeas corpus relief on other claims. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because a penalty-phase jury instruction was unconstitutionally vague under law clearly established by the U.S. Supreme Court at the time of trial, and this error had a substantial and injurious effect, we affirm the district court's decision to grant the writ on this basis. We also conclude that the district court did not abuse its discretion in denying Rogers a competency stay. Finally, we expand Rogers's Certificate of Appealability ("COA") as to several of his

claims, vacate the district court's denials of relief on those claims, and remand for further proceedings.

# I

*A. Rogers's offenses and trial.*

In 1981, Rogers was charged with three counts of murder, as well as larceny and attempted murder. The Nevada Supreme Court described his offenses as follows:

> On December 3, 1980, Frank and Linda Strode returned from a Thanksgiving trip to their home in an isolated part of Pershing County near Majuba Mountain, where they resided with Frank's parents, Emery and Mary Strode, and Frank's sister, Meriam Strode Treadwell. When they entered the parents' trailer, they found the dead bodies of Emery, Mary and Meriam under a blanket in a bedroom. Emery had been shot three times and stabbed twice with a knife which was left in his chest. A pocket watch discovered in Emery's shirt pocket had been struck by one of the bullets; the hour hand of the watch was stopped at one o'clock. Mary had been stabbed in the back and shot in the chest. Meriam, whose wrists were bound with an electric cord, died from a single gunshot wound in her back. Emery and Meriam kept daily diaries. The last entry in both diaries

was recorded on the morning of December 2,
1980.

*Rogers v. State*, 705 P.2d 664, 667 (Nev. 1985) (per curiam).

At trial, Rogers presented significant evidence of his strange behavior around the time of the murders. One witness testified that on the day before the murders, he interacted with Rogers, who made "erratic" statements, including telling the witness that "you may not believe it but I'm a good American," that "I'm on your side," and that "I would fight for my country." On the day of the killings another witness testified that Rogers introduced himself as Teepee and said that he lived in a pyramid. That witness further testified that Rogers identified a nearby hill as "Mount Olympus" asked him if he was the one shooting rockets off of "Mount Olympus," and when the witness denied that he was, Rogers told him, "Somebody is shooting rockets off of Mount Olympus and one of these days it will hit my pyramid and blow me up."

Rogers presented additional evidence that his erratic behavior continued in the period after the murders. Three days after the killings Rogers was refused entry into Canada. Rogers told Canadian officers at the border that he was the emperor or king of North America, and that there was a contract on his life involving the FBI, CIA, motorcycle gangs and the mafia. About a month later, Rogers was arrested in Florida. After his arrest Rogers told the police that "God knew him" and that we are all a part of mother nature. Further, during fingerprinting Rogers wrote on a piece of paper that he "belonged to the government."

Rogers also presented the testimony of psychiatrists suggesting that he "was a paranoid schizophrenic at the time of evaluation and that [his] behavior at the time of the commission of the crimes was consistent with psychotic paranoid delusions, schizophrenia and psychosis and that Rogers could not tell right from wrong or the nature and quality of his acts." *Id.* at 668. The jury convicted Rogers on all three counts of first-degree murder.

At the penalty phase of Rogers's trial, the prosecution sought to prove several aggravators that would make Rogers eligible for the death penalty. Rogers called no witnesses and presented no evidence, instead relying on the evidence of his mental state presented during the guilt phase. Ultimately, the jury found two aggravators: that "[t]he murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another," and that "[t]he murder involved torture, depravity of mind or mutilation of the victim." The jury found no mitigating factors sufficient to outweigh the two aggravators and imposed the death penalty.

On direct appeal, Rogers argued, *inter alia*, that the aggravating circumstance and related jury instruction, that "[t]he murder involved torture, depravity of the mind, or mutilation of the victim," was unconstitutionally vague under *Godfrey v. Georgia*, 446 U.S. 420 (1980). The Nevada Supreme Court rejected this argument, holding that: (1) the jury instruction gave adequate guidance on the meanings of "torture," "depravity of mind," and "mutilate;" and (2) "the jury was justified in finding the aggravating circumstance that the victims were tortured and the murders were committed with depravity of mind," because of the evidence that the Strodes were shot and stabbed repeatedly. *Rogers*, 705 P.2d

at 671–72. The Nevada Supreme Court also performed, as required under state law, an independent analysis of the sufficiency of the evidence supporting the two aggravators found by the jury, concluded the evidence was sufficient, and affirmed Rogers's convictions. *Id.* at 673.

B. *Post-conviction proceedings.*

Rogers filed his first petition for state post-conviction relief in 1986. He was appointed counsel, who filed a five-page supplemental brief. The state district court determined Rogers was competent to proceed, and then held an evidentiary hearing at which Rogers testified as the sole witness. The district court then denied Rogers's petition, and the Nevada Supreme Court affirmed on appeal.

Rogers first filed a federal habeas petition in 1987. Twice, his federal petitions contained both exhausted and unexhausted claims, and twice his federal petitions were stayed, and ultimately dismissed without prejudice so that Rogers could return to state court, file new state petitions for post-conviction relief, and present the unexhausted claims in state court. Each of those successive state petitions was dismissed. Rogers's operative federal habeas petition is his third, filed on June 25, 2002.

The federal district court dismissed some of Rogers's claims as either untimely or procedurally defaulted. Addressing Rogers's remaining claims on the merits, the district court granted Rogers habeas corpus relief on his death sentence, and ordered the state to grant Rogers a new penalty-phase trial or to impose a non-capital sentence. This relief from the district court was based on its holdings that the jury instruction on the depravity of mind aggravator was

unconstitutionally vague, violating clearly established
Supreme Court law as stated in *Godfrey*, and that this error
was not harmless.[1]   The state appealed, resulting in case
number 11-99009.   Rogers also appealed, and received a
COA as to several issues, resulting in case number 11-99010.

## II

We review a district court's decision to grant or deny a
petition for writ of habeas corpus *de novo*. *Dixon v. Williams*,
750 F.3d 1027, 1032 (9th Cir. 2014).   Because Rogers's third
federal petition was filed in 2002, it is governed by the
Antiterrorism and Effective Death Penalty Act ("AEDPA"),
28 U.S.C. § 2254.   Under AEDPA, we may grant relief only
if Rogers can show that the Nevada Supreme Court's decision
was "(1) 'contrary to' clearly established federal law as
determined by the Supreme Court, (2) 'involved an
unreasonable application of such law,' or (3) 'was based on
an unreasonable determination of the facts in light of the
record before the state court.'" *Dickens v. Ryan*, 740 F.3d
1302, 1309 (9th Cir. 2014) (en banc) (quoting *Harrington v.
Richter*, 562 U.S. 86, 100 (2011)).

An "unreasonable application" of Supreme Court law
"must be objectively unreasonable, not merely wrong; even

---

[1] The district court also granted relief on Rogers's claim that he had
received ineffective assistance of counsel, because his trial counsel had
failed to investigate the circumstances surrounding the prior crimes that
had been presented in support of the prior violent felony aggravator, and
had failed to challenge the evidence presented in support of one of those
crimes.   Because we conclude that the depravity of mind jury instruction
was unconstitutionally vague, and that this instruction error alone had
substantial and injurious effect, we do not reach Rogers's claims of
penalty-phase ineffective assistance.

clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). *See also Harrington*, 562 U.S. at 103 (Relief is appropriate only where a state court ruling is "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."). We may look to prior Ninth Circuit authority as persuasive in determining when an application of Supreme Court precedent is objectively unreasonable. *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (A circuit court reviewing a habeas petition may "look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent.")

## III

### A. Was Rogers entitled to penalty-phase relief because an aggravating factor and jury instruction were unconstitutionally vague?

At the penalty phase of Rogers's trial, the jury was instructed that "an aggravating circumstance of murder in the First Degree is where the murder involved torture, depravity of mind, or the mutilation of the victim." The jury was given more instructions on each component of the aggravating circumstance: (1) torture involved "acts with the intent to cause cruel pain and suffering for the purpose of revenge, persuasion or for any other sadistic purpose;" (2) mutilation entails "cut[ting] off or permanently destroy[ing] a limb or essential part of the body, or to cut off or alter radically so as to make imperfect;" and (3) depravity of mind "is characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously,

wantonly vile, horrible or inhuman." But a year before these instructions, the United States Supreme Court confronted a Georgia instruction allowing the imposition of a death sentence "if it is found beyond a reasonable doubt that the offense 'was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.'" *Godfrey*, 446 U.S. at 422 (plurality opinion) (quoting the Georgia instruction). The Court ruled that instruction unconstitutionally vague absent a limiting construction, because a "person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" *Id.* at 428–29. We have previously held that *Godfrey* represents "clearly established federal law under AEDPA" invalidating the same Nevada jury instruction at issue here. *Ybarra v. McDaniel*, 656 F.3d 984, 995 (9th Cir. 2011); *see also Valerio v. Crawford*, 306 F.3d 742, 752, 755–56 (9th Cir. 2002) (en banc).

On direct appeal, the Nevada Supreme Court tried to distinguish *Godfrey*, stating that in Rogers's case, the "three victims were repeatedly shot and stabbed," that one victim "was shot once in the back in an execution-type killing in which she was kneeling and the gun was pressed directly against her body," and that "[u]nder these circumstances the jury was justified in finding the aggravating circumstance that the victims were tortured and the murders were committed with depravity of mind." *Rogers*, 705 P.2d at 672. However, in view of the concessions made by the prosecutor in closing argument, this is an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) (holding that state court factfinding is unreasonable where "the state courts plainly misapprehend or misstate the record in making their findings,

and the misapprehension goes to a material factual issue that is central to petitioner's claim"). During the penalty phase of Rogers's case, the prosecution conceded that neither findings of torture nor of mutilation in support of the requested aggravator were warranted. At closing, the state explained to the jury that "[t]here are three different definitions involved in this particular thing that you should watch and that is, first, torture, depravity of mind or the mutilation of the victims. Two of them probably do not really comply [sic] in this case and it is hard to tell if the torture, itself, could fit into the definition as you read that. But, obviously the depravity of mind has to be here." The Nevada Supreme Court committed the same error here as it did in *Valerio*, because it:

> did not mention the fact that the prosecutor, in his closing argument to the jury, had specifically stated that the evidence did not show torture. It did not discuss the fact that there was no evidence of torture beyond the wounds themselves. And it did not mention the fact that there was no evidence of the killer's "intent" or "sadistic purpose" beyond the nature of the wounds.

306 F.3d at 755. We conclude, as we did in *Valerio* and *Ybarra*, that the depravity of mind aggravating factor and jury instruction are contrary to law clearly established by the Supreme Court in *Godfrey*.[2]

---

[2] In *Valerio*, we set out two methods by which a state appellate court can cure an unconstitutionally vague jury instruction. First, the state court can find the error harmless under *Chapman v. California*, 386 U.S. 18, 24 (1967), "if it finds beyond a reasonable doubt that the same result would have been obtained without relying on the unconstitutional aggravating

### B. Was the jury's consideration of the unconstitutionally vague aggravating factor harmless?

Having concluded that the depravity of mind aggravator was unconstitutionally vague, contrary to *Godfrey*, and that the Nevada Supreme Court did not cure that error, we next address whether the error was harmless. "In the absence of the rare type of error that requires automatic reversal, relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, No. 13-1428, 2015 WL 2473373, at *8 (U.S. June 18, 2015) (internal quotation marks omitted). The standard governing harmless error review on federal habeas petitions is stated in *Brecht v. Abrahamson*: whether the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637 (1993). "There must be more than a 'reasonable possibility' that the error was harmful." *Ayala*, 2015 WL 2473373, at *8 (quoting *Brecht*, 507 U.S. at 637). But "where a judge in a habeas proceeding is in grave doubt as to the harmlessness of the error, the habeas petitioner must win." *Pensinger v. Chappell*, No. 12-99006, 2015 WL 3461989, at *11 (9th Cir. June 2, 2015) (internal quotation marks omitted); *see also Payton v. Woodford*, 299 F.3d 815, 828 (9th Cir. 2002) (en banc) ("Only if the State has

---

circumstance." 306 F.3d at 756. Or, the state court can undertake a "'reweighing' [of] aggravating and mitigating circumstances under *Clemons* [*v. Mississippi*, 494 U.S. 738, 752–53 (1990)]." *Id.* at 757. Here, the Nevada Supreme Court did not try to cure the instruction error. On direct review it erroneously concluded there had been no error; and the instruction was not mentioned in its dispositions of Rogers's subsequent petitions for post-conviction relief. We conclude the Nevada Supreme Court did not give the "close appellate scrutiny of the import and effect of invalid aggravating factors" required by Supreme Court and our precedent. *Id.* at 759 (quoting *Stringer v. Black*, 503 U.S. 222, 230 (1992)).

persuaded us that there was no substantial and injurious effect on the verdict do we find the error harmless.").

To assess harmlessness in the case of an unconstitutionally vague jury instruction, we compare the effect of the jury instruction that was given "to what the verdict would have been if [a] narrowed instruction had been given." *Valerio*, 306 F.3d at 762. The narrowed instruction we have applied previously was announced by the Nevada Supreme Court in *Robins v. State*, and requires a jury to be instructed that "depravity of mind" can be found only through evidence of "torture, mutilation or other serious and depraved physical abuse beyond the act of killing itself." 798 P.2d 558, 570 (Nev. 1990).[3]

Applying that narrowed construction here, we conclude that the error is not harmless. The prosecution's concession at closing argument that the circumstances of Rogers's crime likely did not fit the definitions of torture or mutilation strongly suggests that the jury would not have found the narrowed aggravator. Further, even absent that concession, the narrowed instruction itself commands that the torture, mutilation or serious physical abuse "must have been caused by an act 'beyond the act of killing itself.'" *Valerio*, 306 F.3d at 762 (quoting *Robins*, 798 P.2d at 570). As described by the prosecutor, the evidence of Rogers's depravity of mind

---

[3] We first applied this test in *Valerio*. During post-conviction proceedings there, the Nevada Supreme Court purported to apply the narrowed instruction. *Valerio*, 306 F.3d at 755. However, in *Ybarra* we applied the *Robins* instruction, for purposes of harmless error analysis, to a conviction finalized before *Robins* was decided, and where, like here, the Nevada courts never addressed *Robins*. *Ybarra*, 656 F.3d at 988–89, 995 n.6. As in *Valerio* and *Ybarra*, we assume, without deciding, that this narrowed instruction is constitutional under *Godfrey*.

consisted of stabbing and shooting one victim, having "some sort of confrontation" with another victim before stabbing him twice and shooting him twice, and "execut[ing]" the final victim by shooting her "in the back." In *Valerio*, we concluded that depravity of mind could not be shown in a case where the petitioner stabbed his victim 45 separate times, because we concluded that a juror could have concluded that all of the victim's wounds could constitute the "act of killing itself." 306 F.3d at 762–63. Here, in contrast, Rogers inflicted at most five wounds on Emery Strode, during a "confrontation," and considerably fewer upon Mary Strode and Meriam Treadwell. These acts, though reprehensible, were coterminous with "the act of killing itself," and a juror likely would have concluded that these acts did not constitute torture or depraved physical abuse.

The existence of the prior conviction aggravator does not affect this conclusion.[4] Nevada is a "weighing" state; a jury

---

[4] Neither on direct appeal nor in Rogers's post-conviction proceedings has the Nevada Supreme Court addressed harmlessness by noting the existence of the prior convictions aggravator. So we do not deal with a harmless error determination by the Nevada Supreme Court.

However, in reviewing Rogers's third petition for state post-conviction relief, the Nevada district court held:

> The Warden almost concedes that the jury instructions in this area were constitutionally defective. Instead the Warden focuses on the fact that there was a valid aggravating factor a prior violent felony conviction
> . . . .
>
> . . . .

can sentence a defendant to death "only if one or more aggravating circumstances are found and any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances." Nev. Rev. Stat. § 200.030(4)(a). Here, the balance of aggravating and mitigating circumstances was doubtless affected by the presence of the unconstitutionally vague depravity of mind aggravator. Much of what the prosecution argued at sentencing could find an outlet only though the depravity of mind aggravator. The prosecution, after presenting its theory of depravity of mind, described Rogers as a "pretty mean and vicious person" who had "annihilated" the Strode family. The prosecutor told the jury that the death penalty allowed society to express its "outrage" over murders, and that outrage was the feeling the jury should have when it returned its verdict. Since *Godfrey*, the Supreme Court has repeatedly warned of the dangers of vague aggravators in allowing "unchanneled imposition of death sentences in the uncontrolled discretion" of the jury. 446 U.S. at 429. *See*

> [S]ince this court has already upheld an aggravating factor it is not necessary for it to reach the ultimate conclusion on this issue. . . . The likelihood that a different result would have been reached no verdict of death if a properly worded jury instruction had been given is remote. Therefore the harmless error analysis offered by the Warden is correct.

On appeal, the Nevada Supreme Court dismissed Rogers's petition on procedural grounds and did not address the merits of this claim. In other words, the Nevada Supreme Court did not address harmlessness. Under AEDPA, we generally look "to a single state court decision, not to some amalgamation of multiple state court decisions." *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005). However, even assuming that the Nevada district court's harmlessness decision is entitled to AEDPA deference, it is objectively unreasonable.

*also Stringer*, 503 U.S. at 235–36 ("[T]he use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty.").

When the jury returned its verdict, it found that there were "not mitigating circumstances *sufficient to outweigh* the aggravating . . . circumstances." However, there was significant evidence presented of Rogers's "extreme mental or emotional disturbance" at the time of the murders, and we agree with the district court that Rogers's mental disturbance constituted a significant mitigator. Absent the error on the depravity of mind aggravator, the balance of aggravators and mitigators looks much different. If just a single juror were persuaded that evidence of Rogers's mental disturbance outweighed the only remaining aggravator, Rogers would have avoided the death penalty. The state has not given "fair assurance" that the jury's instruction on an impermissibly vague aggravator had no substantial and injurious effect on the verdict. *Gray v. Klausner*, 282 F.3d 633, 651 (9th Cir. 2002).

**IV**

The district court did not abuse its discretion in denying Rogers's motion to stay proceedings due to his alleged incompetency. The district court held an evidentiary hearing, heard the testimony of experts, and explained in a comprehensive order the factual findings underlying its decision that Rogers was competent; none of these findings was clearly erroneous. *See Comer v. Schriro*, 480 F.3d 960, 962 (9th Cir. 2007) (en banc) (per curiam). Contrary to Rogers's arguments, we need not decide what, if anything, remains of our decision in *Rohan ex rel. Gates v. Woodford*,

334 F.3d 803 (9th Cir. 2003), after the Supreme Court abrogated the statutory right to a stay based on competency in *Ryan v. Gonzales*, 133 S. Ct. 696 (2013).

Turning to Rogers's many uncertified guilt-phase claims,[5] we expand Rogers's COA, vacate the district court's denials of relief and remand for further proceedings, because the district court did not have the benefit of many potentially relevant cases decided while Rogers's appeal was pending. *See Murray v. Schriro*, 745 F.3d 984, 1002 (9th Cir. 2014) (holding that we may issue a COA if jurists of reason could debate the correctness of district court's procedural ruling or whether petitioner has been denied a constitutional right). It is appropriate that the district court address the significance, if any, of those new precedents in the first instance.

The district court held that several of Rogers's claims were procedurally barred, and dismissed them. After that order, the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and we have applied *Martinez* in several cases, including *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013), *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc), and *Pizzuto v. Ramirez*, 783 F.3d 1171, 1176–78 (9th Cir. 2015). We expand the COA as to Claims 12, 14, 15, 16, 17, 18, 26, and 28, vacate the district court's dismissal of these claims, and remand them for consideration of *Martinez* and our decisions interpreting it. On remand, the district court should consider whether these claims are claims of ineffective assistance of trial or direct appeal counsel

---

[5] Our grant of partial habeas corpus relief moots Rogers's numerous penalty-phase claims, which we do not address.

cognizable under *Martinez*, and whether Rogers can show cause and prejudice to excuse his procedural default.[6]

The district court also denied several claims on the merits, refusing under *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), to consider new evidence Rogers presented in support of his federal habeas petition. We expand the COA as to Claims 5, 9, and 10, vacate the district court's denial of these claims, and remand for the district court to consider our subsequent decision in *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), as well as the decisions in *Martinez*, *Ha Van Nguyen*, *Detrich*, and *Pizzuto*.

Finally, the district court determined that several of Rogers's claims were barred by AEDPA's one-year statute of limitations, 28 U.S.C. § 2244(d)(1), and that Rogers was not entitled to equitable tolling on those claims. While Rogers's case was pending on appeal, we decided *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2014). We expand the COA as to Rogers's Claims 1, 2, and 8, vacate the district court's dismissal of those claims, and remand to the district court to consider whether, in light of *Sossa*, Rogers is entitled to equitable tolling on those claims. If the district court concludes that equitable tolling is appropriate, it should consider in the first instance whether Rogers can show good cause for a stay and abeyance procedure under *Rhines v. Weber*, 544 U.S. 269 (2005). *See Blake v. Baker*, 745 F.3d 977, 984 (9th Cir.), *cert. denied*, 135 S. Ct. 128 (2014) (holding that a petitioner who showed ineffective assistance

---

[6] Rogers also challenges the sufficiency of the state procedural default rule applied in his case. We decline at this time to address that sufficiency issue. Rogers may raise this challenge again in a later appeal, if not rendered moot by proceedings on remand.

of counsel in initial post-conviction review proceedings had shown "good cause" for a stay and abeyance).

**V**

We affirm the district court's grant of habeas corpus relief related to Rogers's death sentence. We affirm the district court's denial of Rogers's motion for a stay based on competency. Finally, we vacate in part the district court's denial of guilt-phase habeas relief and remand for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part and REMANDED.**